AARON BLISS *et al.*

*v.*

JAMES KENNEDY *et al.*

1. CONVEYANCES—*what passes by a grant.* Where a factory and the land on which it stood with the appurtenances were conveyed, the factory being the subject-matter of the grant, all that belonged to the tract conveyed, and over which the grantor had dominion, passed by his deed, under the term "appurtenances," and nothing more.

2. SAME — *grants how construed.* Courts always construe grants, by considering the condition of things at the time the grant was made.

3. Where a grantor conveyed a factory, and the land on which it stood, with its appurtenances, he owning nothing outside of the boundaries of the land conveyed, above or below the factory, he could convey nothing beyond the premises themselves; and therefore no part of a stream above the factory, by which the factory was supplied with water, could pass as appurtenances to it.

4. SAME — *effect of conveyance upon the future rights of the grantor.* Where a deed conveys a factory, located on a stream which supplies it with water, with the land on which it stands, "together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining," the grantor is not thereby inhibited from acquiring future rights in the stream.

5. RIPARIAN PROPRIETORS — *priority of use gives no exclusive right.* Priority of use of the water of a stream by a riparian proprietor gives no exclusive right.

6. SAME — *their respective rights.* The rule is, where two factories are located on the same stream, so far as the water is destroyed by being converted into steam, neither is entitled to its exclusive use; it is to be divided between them as nearly as may be according to their respective requirements; if each factory requires the same quantity of water it should be equally divided; but, while the water is incapable of being thus divided with mathematical exactness, if the jury should find that the upper factory has used more than its reasonable share, or has diverted the water from its natural channel after using it, or so corrupted it as to deprive the lower proprietor of its use to such a degree as to cause a material injury to that factory, it would be ground for damages, and ultimately for an injunction.

7. CHANCERY — *rights of riparian owners must be established in a court at law.* To authorize the interposition of a court of chancery by injunction to restrain a riparian proprietor from using the water of a stream for manufacturing purposes, the complainant must first establish his rights, and a violation of those rights, in a court at law.

8. SAME. If a riparian proprietor willfully, or wantonly, or carelessly, so use his privilege as to injure the rights of others, the courts of law are open to them, in which to establish their rights and redress the wrong. Chancery cannot interpose until the right and its invasion are determined.

9. SAME — *when chancery will prevent an injury.* Chancery may, for the purpose of preserving property until a legal decision upon the right set up can be had, restrain by injunction a party doing or threatening an invasion of the rights claimed, but in all such cases the party complaining must show a strong *prima facie* case in support of the title which he asserts, and show that he has not been guilty of any improper delay in applying for the interposition of the court. In such case the court will also take into consideration the degree of inconvenience and expense to which the granting of the injunction would subject the defendant in the event of his being found to be in the right.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. O. L. DAVIS, Judge, presiding.

This was a suit in chancery, commenced in the Coles county Circuit Court, by Aaron Bliss and Thomas Lytle against the defendants in error.

The complainants by their bill allege in substance, that they are the owners in fee of a lot of ground in Charleston, conveyed by deeds with the usual covenants, by James Kennedy, one of the defendants, to complainants, on which lot James Kennedy had previously, to wit, in 1855, erected a woollen factory, with capacity to do a large business in that line, and that the defendants, five or six years afterward, erected their factory on the same stream, on their own lot, and about one hundred yards above complainants' factory. Complainants charge that defendants have used the water of the stream to their detriment, and have occasionally let their dye-slops escape and get into the stream, and thence into the pool of complainants; and further, that defendants were about to proceed to dig a deep drain from their factory through the land of complainants, against their will, for the purpose of carrying off their slops.

The bill prays for an injunction restraining the defendants from interfering with the alleged rights of the complainants.

The defendants' answer admits the erection and ownership of the two factories, and the doing of the amount of custom and other work claimed in the bill, but denies the claim of complainants of any superior or exclusive right to the use of the water flowing in the ravine or stream on which said factories are situated, either by virtue of the deeds from James Kennedy, or priority of occupancy; defendants deny all intention to injure complainants by waste of dye-stuffs, or otherwise; and deny any intention or desire to dig a ditch through the lot of complainants, aforesaid, without their consent.

To which the complainants filed a general replication.

The case was heard at the March Term, 1866, of the Circuit Court of Coles county. Upon the hearing the injunction prayed for was refused, and the bill dismissed.

The material facts appear in the opinion.

The errors relied upon are, the refusing of the injunction, and dismissing the bill, by the court below.

Messrs. COLER & SMITH, and WILEY & PARKER, for the plaintiffs in error.

Messrs. JOHN SCHOLFIELD and O. B. FICKLIN, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

The claim made by the complainants, plaintiffs in error here, is reduced to this simple question, have the complainants, by reason of priority in the use of this water, or from any other cause, the exclusive right to the use of the water, which these springs and rivulets supply?

The plaintiffs in error insist, as against these defendants, they have such right, derived in two ways; first, by the deeds of Kennedy to them, and second, on the evidence in the record. Upon the first point, it is only necessary to recur to those deeds, with a short preliminary statement of some facts.

James Kennedy, one of the defendants in error, had, in 1855, erected a woollen factory on a certain piece of ground in the town of Charleston, in Coles county, and operated it until 1857, when Thomas Lytle, one of the plaintiffs in error, purchased of him an undivided half interest in the factory, and business and lot of ground, together with the water privilege thereto belonging, and all appurtenances whatsoever. Kennedy and Lytle carried on the factory until 1859, when they sold an undivided third of the ground, factory and business, to Joseph Peyton, and the same was carried on by Kennedy, Lytle & Peyton until March, 1860, at which time Aaron Bliss, the other plaintiff in error, bought the interests of both Kennedy and Peyton, taking a general warranty deed from them for an undivided two-thirds of the same. The premises are described in this deed as "one undivided two-thirds of the building and machinery, together with two-thirds of the following parcel or

lot of ground (describing it by courses and distances) together with all the hereditaments and appurtenances thereto belonging, or in any wise appertaining."

Now the claim of plaintiffs in error is, that by this deed Kennedy virtually covenanted, that his grantees should have the use of the water as it then came to the factory, the flow of the water from the springs and branch on which the factory was erected being appurtenant to the land granted.

At the time of the execution of this deed by Kennedy, and at the time he executed the deed to Lytle, it is not pretended Kennedy had any right, title or claim to any land save that on which the factory was erected. By his deed then, he cannot be held to have sold and conveyed any thing but the land and factory specified in it, and the appurtenances to that land and factory then belonging.

Because a small stream, fed by springs, flowed from a distant source, through this land, it cannot, with any plausibility, be contended that the water or stream outside of the boundary of the land he then owned and conveyed, included those other portions of the stream flowing through other lands he did not own, as appurtenant to the land he conveyed, and yet such is the claim of the plaintiffs in error, a claim having no foundation in reason, law or justice. All that belonged to the tract conveyed, and over which Kennedy then had dominion, passed by his deed under the term " appurtenances," and nothing more. The principal thing conveyed was the factory and the ground on which it stood, and all that pertained to either, which Kennedy owned, passed by his deed.

This proposition is so reasonable, that the mere statement of it should be sufficient, but there is authority on the point. It was held in *Rockly* v. *Sprague*, 17 Maine, 281, that the grant of a mill carried with it the use of the head of water necessary to its enjoyment, with all incidents and appurtenances, but only so far as the right to convey to this extent existed in the grantors. And the same doctrine is recognized by this court, in *Wilcoxon* v. *McGhee*, 12 Ill. 381, in which it was held, where a mill and its appurtenances were conveyed,

the mill being the subject matter of the grant, the right to continue to overflow the lands of the grantor continued to the same extent as when the grant was made. And the same was held in *Hadden* v. *Shoutz*, 15 id. 581. Courts always construe grants by considering the condition of things at the time the grant was made. Kennedy, when he conveyed the factory and land, with its appurtenances, to complainants, owning nothing outside of the boundaries of the land conveyed, above or below the factory, could convey nothing, and, therefore, no part of the stream above the factory could pass as appurtenant to it. Nor are there any covenants in Kennedy's deeds inhibiting him from the future acquisition of rights in this stream of water, and if there were, they could not affect his co-defendants, — they would not be bound by them.

The claim of complainants based upon Kennedy's deeds falls to the ground.

Is there, then, any reasonable ground of complaint on the part of complainants shown by the evidence as growing out of the subsequent acquisition by these defendants of the land and stream above this factory, and thereon erecting a rival factory?

Complainants charge in their bill of complaint, that the erection of this factory by these defendants was with a view to break up complainants' business, and to supersede them in the woollen factory business, and to divert the business and custom of complainants to them, the defendants. This factory was erected by the defendants, in 1863, under the immediate view of complainants, and with their full knowledge of the steps being taken by the defendants to put it into operation, but not a word of remonstrance came from complainants, or of objection, until the rival factory was in successful operation, when it was discovered there was not water enough for both mills, and the Circuit Court was applied to for an injunction to restrain the defendants in the use of their property. This brings us to the consideration of the second ground of claim assumed by the plaintiffs in error, and that is, their exclusive right to the use of this water, established by the facts in the case.

Those facts go to show, that plaintiffs in error have priority of use; that, in the natural flow of this water, in wet seasons, or after rains, there is water enough to run five or six such factories all the time, and it is admitted, on this record, that these factories run every day.

Now, it has been always held, that priority of use gives no exclusive right, and it is very difficult to provide any rule that shall exactly define the boundaries of rights claimed by upper and lower proprietors on the same water course. Adjudged cases, the most of them, relate to the use of water for a particular purpose, which, when that purpose is accomplished, is returned to its natural channel. Here the water is actually consumed by converting it into vapor, so that it cannot return to its usual channel to flow on.

What should be the rule in such cases cannot be precisely laid down, as this court said in *Evans* v. *Meriwether*, 3 Scam. 492. The case was this:

Smith & Baker, in 1834, bought six acres of land, through which a branch ran, and erected a steam mill upon it. They depended upon this branch and a well for water for their engine. A year or two afterward, Evans bought six acres of land on the same branch, above and immediately adjoining Smith and Baker's lot, and he erected on it a steam mill, depending, also, upon this branch and a well for water to run his engine. After the erection of Evans' mill, in 1836 or 1837, Smith & Baker sold to Meriwether. Ordinarily there was a supply of water for both mills, but in the fall of 1837 there was a drought, and the branch so far failed, that it did not afford water sufficient to run the upper mill continually. One of the hands employed about this mill made a dam across the branch just below the mill, and thereby diverted all the water into Evans' well. After this diversion of the water, the branch went dry below, and Meriwether's mill could not run more than one day in a week, and, to do that, it was supplied with water from his well. For this injury, Meriwether brought his action at law, and recovered judgment.

On appeal to this court it was held, after discussing the

respective rights of riparian proprietors thus situated, that, so far as natural wants are concerned, each proprietor in his turn may, if necessary, consume all the water to supply them, but, where the water is not wanted to supply natural wants, and there is not sufficient for each proprietor living on the stream to carry on his manufacturing purposes, neither has a right, without a contract or grant, to use all the water; all have a right to participate in its benefits. When this is so, no rule, from the very nature of the case, can be laid down as to how much each may use without infringing on the rights of others. In such cases the question must be left to the judgment of the jury whether the party complained of has used, under all circumstances, more than his just proportion. This case, in some of the important facts, does not differ from the one before us, and it has been cited with approbation by Professor Washburne in his treatise on easements and servitudes. Washburne on the American Law of Easements and Servitudes, 222, 224.

The complainants having established no exclusive right to the use of this water, as against the defendants, by virtue of any covenants on the part of all or either of them; having, as the evidence proves, prior occupancy or use of the stream; and there being an insufficient supply of water for both factories in dry seasons, and prior occupancy giving no exclusive right, it is then a question for a jury, and not for a court, to determine, under all the circumstances, how the water has been appropriated.

This case then is not yet matured for the chancellor. Under the circumstances developed by this record the appellants have no right to resort to a court of equity until they shall have established their right at law.

To authorize the interposition of chancery by injunction, — a writ which may, in its operation, produce incalculable damage to a manufacturer, against the prosecution of whose legitimate business it is required to issue and does issue, — justice requires there should be first established not only a clear and palpable violation of the alleged rights of the party complaining, but the rights themselves should be certain, undoubted,

and such as have been ascertained by the verdict of a jury, and can be, thereby, clearly ascertained and measured.

When the right is thus established, the aid of a court of chancery to protect appellants in the full enjoyment of it will not be invoked in vain.

An examination of authorities on this subject will show, that, in cases like this, the right of the party must first be established at law, before the restraining arm of chancery can be called into exercise. 1 Daniels' Ch. Pr. (Perkins' ed.) 573, referring to *Weller* v. *Smeason,* 1 Cox, 102. Chancery may undoubtedly, for the purpose of preserving property until a legal decision on the rights set up can be had, restrain, by injunction, a party doing or threatening an invasion of the right claimed, but in all such cases the party complaining must show a strong *prima facie* case in support of the title which he asserts, and to show that he has not been guilty of any improper delay in applying for the interposition of the court. And the court has also to consider the degree of inconvenience and expense to which granting the injunction would subject the defendant in the event of his being found to be in the right. 3 Daniels' Ch. Pr. (Perkins' ed.) 1743.

We do not think such a case has been made out by complainants, nor is such the scope and object of their bill. They do not allege in it, that they have commenced, or are about to commence, legal proceedings to establish their right, but call upon a court of chancery to establish it in the first instance. The duty of that court is to protect a party in his acknowledged rights, rather than to establish new and doubtful ones. It is admitted by the defendants in error, that each of these proprietors has a right to the equal use of this water in the order of their location on the rivulet.

If, then, the upper proprietors shall willfully, or wantonly, or carelessly, so use their privilege as to injure the complainants, the courts of law are open to them in which to establish their rights and redress the wrong. *Evans* v. *Meriwether, supra.* Chancery cannot interpose until the right and its invasion are determined.

It is urged by plaintiffs in error, that this is an objection to the jurisdiction, which, not having been made in the Circuit Court, cannot now be made here.

We do not so regard it.

The court, on the hearing, caused this decree to be entered: And now on this day come the said parties, by their solicitors; and this cause is set down for hearing on the bill of complaint, answer, replication, and the parol and other evidence introduced, and after hearing the evidence and argument of counsel, and the court being sufficiently advised in the premises, it is considered by the court that the said complainants have no equity against the said defendants; it is therefore ordered by the court, that the complainants' bill do stand as dismissed out of this court, with costs to be taxed, etc.

The point made here does not go to the jurisdiction of the court. It is made directly upon the equity set out in the bill, and the argument, when concisely stated, is, that, with all the showing of the complainants, they have no ground on which to base a claim to restrain the defendants in the use of this water. Their rights must first be established before a jury. It was not a question for chancery to decide, whether defendants used more than their fair and reasonable proportion of this water. *Dunning* v. *City of Aurora,* decided April Term, 1866.

A reasonable rule, and one which we desire to lay down, would seem to be this: That so far as the water is destroyed by being converted into steam, neither of these factories is entitled to its exclusive use; that it is to be divided between them as nearly as may be according to their respective requirements; that, if each factory requires the same quantity of water, it should be equally divided; but, while the water is incapable of being thus divided with mathematical exactness, if the jury should find that the upper factory has used more than its reasonable share, or has diverted the water after using it from its natural channel, or so corrupted it, as to deprive the lower proprietors of its use to such a degree as to cause a material injury to that factory, it would be ground for damages, and ultimately for an injunction. The maxim " *sic utere tuo, ut*

*alienam non loedas*" applies to the defendants. Whatever is true of their rights, is true of the proprietors below them on the stream, the plaintiffs in error here.

As the Circuit Court dismissed the bill for want of equity, we must affirm the decree and require the plaintiffs in error first to establish their right and the extent of it, at law, and also the invasion of it by the defendants in error.

The bill will be dismissed however, without prejudice to the complainants.

*Decree affirmed.*