JOSEPH G. STOLP *et al.*

*v.*

CHARLES HOYT.

1. CHANCERY — *riparian rights — when will not interfere until after the right and its infringement — established at law.* Where three persons, in possession respectively of certain lands, viz., A of those lying upon the east bank of a river, B of those lying upon the west bank, and C of an island in the center, made their respective entries for the same at the government land office on the same day, and which lands had been separately surveyed and purchased by them as distinct tracts, — *held*, in a suit in chancery brought by A against the others to settle their respective rights to the use of the water bounding these grants, that a court of equity could not acquire jurisdiction in such case, to settle the legal rights of the respective parties to the water-course, until after the right and its infringement had been established in a court of law.

2. FORMER DECISIONS. The case of *Bliss et al. v. Kennedy et al.*, 43 Ill. 67, cited in support of this doctrine.

3. WATER-COURSE — *riparian proprietors* — *rights of, sufficiently certain to be determinable at law.* That the rights of the respective parties in the water are sufficiently certain to be easily determined by a court of law for any infringement thereof by either.

4. SAME — *boundaries.* That, the mainland and the island having been separately surveyed and purchased by these parties respectively as distinct tracts, the grantees of the mainland cannot claim, that the island purchased at the same time by C was not reserved but included in the grant to them.

5. SAME. That, the grant to each being separate and distinct, neither can claim beyond the calls of his entry and patent. That C acquired the same riparian rights as A and B, two *fila aquæ* being established, one on each side of the island.

6. SAME. In a grant of land lying on a stream not navigable, if there be a clear reservation of the islands, either expressly or by implication, they do not pass to the grantee, and the *filum aquæ* which bounds the grant is the center thread between the mainland and the island.

APPEAL from the Circuit Court of De Kalb county; the Hon. THEODORE D. MURPHY, Judge, presiding.

The opinion states the case.

Messrs. DICKEY, WHEATON & CANFIELD, E. A. STORRS and R. G. MONTONY, for the appellants.

Messrs. GLOVER, COOK & CAMPBELL, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill in chancery, brought by Hoyt against Stolp, Gill and others, to settle the rights of the respective parties to the use of certain water power in Fox river. Hoyt owned on the west bank, Gill on the east, and Stolp an island in the middle of the river, containing about ten acres, on the head of which rested the dam. The court, on the final hearing, made a decree determining the respective shares of Hoyt, Stolp and Gill in the water, and appointing commissioners to make partition in accordance with the decree, and enjoined the parties from using the water except as specified in the decree. Stolp and Gill appealed.

In Stolp's amended answer to the bill, objection is taken to the jurisdiction, and the same objection has been urged in this

court. We are obliged to hold the objection well taken. In the case of *Bliss et al.* v. *Kennedy et al.*, 43 Ill. 67, we held that chancery would not interpose by injunction in cases of this character, until after the right and its infringement had been established in a court of law.

It is, however, urged, by the counsel for appellee, that there was a tenancy in common in this water, and that chancery could take jurisdiction for the purposes of partition, and it is also insisted that the rights of the several parties are so far undetermined and uncertain that the complainant can have no adequate remedy at law for an infringement of his rights in the water. This argument makes it necessary to state our conclusions upon some of the questions made by counsel in regard to the title of some of the parties.

It appears, that, prior to the year 1835, J. and S. McCarty had what was called a " settler's claim " to this quarter section and the water-power, and had built a mill-dam and made other improvements. It does not, however, appear in the record, nor is it claimed in the argument, that they had what would have been recognized under the laws of congress as a right of pre-emption. In the fall of 1834 the McCartys sold to one Lake their claim to that part of the quarter lying on the west bank of the river, together with half of the dam and water-power, and Lake went into possession. In November, 1835, the McCartys sold to Frederick Stolp a portion of the island and of the water-power, and Joseph G. Stolp, the appellant, went into possession, as claimed by him, under this sale. On the 8th of June, 1842, up to which time the land belonged to the United States, Lake entered at the government land-office the fraction of the quarter lying on the west bank; and on the same day Stolp entered the island, by the description of " the island in the S. W. quarter of section 22, township 38 north, range 8 east of 3d P. M.," and Samuel McCarty entered the fraction of the quarter lying on the east bank. In August, 1842, Hoyt, the complainant below, purchased Lake's title. Gill claims on the east bank, by virtue of a series of conveyances from McCarty, the deed from the latter bearing

date January 31, 1843, and having been recorded February 3, 1843. On the 1st of February, 1843, Samuel McCarty made a conveyance to the appellant Joseph G. Stolp, which the latter claims to have been executed in pursuance of the sale made to Frederick Stolp in 1835, already mentioned, but this conveyance to Joseph G. Stolp was not recorded until after the record of the first deed in the chain of conveyances from McCarty down to Gill. Stolp now claims both riparian rights as owner of the island on each side of the same, and also, as against Gill, so much of the water as was conveyed to him by McCarty's deed, insisting that his deed relates to the sale of 1835, and that his possession was notice to Gill. Hoyt, the complainant, insists, that, by virtue of his ownership of the west bank, he owns the water to the middle of the river, without regard to the island, and denies all riparian rights to Stolp growing out of the ownership of the island.

The McCartys, in selling to Lake the west bank and half of the water-power, in 1834, executed, so far as appears, no written instrument. Hoyt, then, claiming under Lake, cannot claim that any rights inured to him in the water-power, under McCarty's subsequent entry of the east bank. Since the title passed from the United States, there has been no tenancy in common between Hoyt and the McCartys. The rights of Hoyt spring solely from his ownership of the west bank of the river, and, if he is entitled to go only to the middle thread between the west bank and the island, then his claim is easy of ascertainment in a court of law, and there can be none of that difficulty in prosecuting an action for damages which counsel allege as a ground of jurisdiction. We think it clear that his title goes only to the center thread between his shore and the island.

It is urged by appellee's counsel, that a grant of lands on a stream not navigable includes all islands, or parts of islands, between the shore and the center thread of the stream, belonging to the grantor, unless reserved from the operation of the grant. This is true, but the converse of the proposition is equally true, — that, where there is a clear reservation of the

islands, either expressly or by necessary implication, they do not pass to the grantee, and the *filum aquæ* which bounds the grant is the center thread between the shore and the island. In such cases two *fila aquæ* are established — one on each side of the island. *Hopkins Academy* v. *Dickinson,* 9 Cush. 544; *People* v. *Canal Appraisers,* 13 Wend. 355; Washburne on Real Property, 677; Angell on W. C. 14. There would be no reason in the contrary rule. There is no more ground for holding the owner of the shore owns the water to the island, than there is that the owner of the island owns the water to the shore.

The question is, then, was there a reservation of the island by the general government at the time Lake entered the fraction of the quarter lying on the west bank? It must be remembered that Lake, Stolp and McCarty were all in possession of the west bank, the island, and the east bank, respectively, and they all made their respective entries at the government land-office on the same day. The fraction on each bank, and the island, had been separately surveyed, and the government sold and the purchasers bought them as distinct and independent tracts. It is impossible to suppose that either Lake or McCarty believed, or had any reason to believe, that in buying the shore fractions, they were in fact buying to the center thread of the river passing through the island, and that the island would be divided between them, when they knew that the island was an independent survey which Stolp was buying, and for which he was receiving a certificate of purchase at the same time they were making their own entries. As the government sold the island to Stolp at the same time it sold the main-land to Lake and McCarty, it is idle to say it did not reserve the island from the sale of the main-land. The reservation would hardly have been stronger if it had been written on the face of the certificates issued to Lake and McCarty.

But the counsel for appellee insist, that the survey of this quarter section into two fractions and an island, and its sale in this manner, were not authorized by the acts of congress in regard to government lands, and they quote the case of *Brown's*

*Lessée* v. *Clement,* 3 Howard, 660, as analogous to the case at
bar. But it is not in point. In that case, one of the parties
claimed under an entry and patent for the entire south-west
quarter. The section was fractional, and had been surveyed
and platted into two divisions of unequal size, an eastern and a
western. The court held this survey unauthorized, and that
the patent, calling for the entire S. W. quarter, entitled the
patentee to claim the one hundred and sixty acres which would
have been within that quarter had the survey been properly
made. But in the case before us neither Lake nor McCarty
entered or received a patent for the entire quarter. On the
contrary, each entered a specific fraction of the quarter, while
Stolp entered the island, and neither can claim beyond the calls
of his entry and patent. There is no more reason for saying,
that Lake by his patent took the island, than that he took the
east shore, and there would be no more reason for giving him
the island than there would be for giving it to McCarty, under
the calls of their respective patents.

It is suggested that Stolp's entry, so far as concerns riparian
rights, must be considered as having been made under an
agreement with Lake and McCarty that the use of the water
should be in accordance with the rights derived by contract
from McCarty under his settler's claim. But there is not the
slightest proof of such an agreement, and we are not at liberty
to invent it and make it the basis of a decree. Possibly such
may have been the fact, and it may have been, on the other
hand, that the sales by McCarty, made while the title was yet
in the government, were understood by the parties to be merely
a transfer of his naked possessory right, to be operative only
while the title remained in the government. But we cannot
proceed upon shadowy hypotheses devised in favor of one party
or the other. We must accept the facts as we find them in the
record, and on these facts we must hold that Stolp, by virtue
of his entry and patent, acquired the same riparian rights as
Lake and McCarty, and is entitled to go to the middle thread
of the water on each side of the island.

In this view of the case, the jurisdiction of the court fails,

for the original bill does not aver, nor do we understand the evidence as showing, that Hoyt has been disturbed in the enjoyment of one-half of the water flowing between his fraction and the island. The same is true of the cross-bill of Gill. It does not aver, nor does the evidence show, that Stolp has used more water flowing on the east side of the island than he was entitled to use under his riparian rights, as we have here defined them. As to the question between Gill and Stolp, whether the latter can claim, in addition to his riparian rights, a portion of the water pertaining to McCarty's patent, under McCarty's deed of February, 1843, against the deed from Mc-Carty under which Gill claims, it would not now be proper to express an opinion. If Stolp is using more water than his riparian rights would give him, and Gill shall bring an action against him for diverting water properly belonging to Gill, that question will arise, but we will not decide it in advance and hypothetically.

The decree of the Circuit Court is reversed and the cause remanded, with directions that the original and cross-bill be dismissed without prejudice to future proceedings. The costs in this court will be taxed, one-half against Hoyt and one-half against Gill. The costs in the Circuit Court arising under the original bill will be taxed against Hoyt, those under the cross-bill against Gill.

*Decree reversed.*