Reed, P. J.,
delivered the opinion of the court.
Taking up the questions of fact where the evidence was conflicting, I find that the allegation following, contained in the replication: “ (8) That at the same time defendant claims it became a consumer of water from said Dry Creek ditch, in 1891, by the alleged sale or transfer mentioned in said paragraph six of its answer, or in any manner or at any time, the water then and now so claimed by it is the excess and difference in part between the amount actually needed and used by the lawful consumers of water from said ditch for a beneficial use and purpose, and the amounts mentioned in said decree, and was abandoned and unused by said company and its consumers, for any beneficial use and purpose, before this defendant became a consumer therefrom,” — or that part of it necessary to be regarded, viz. that the water carried by the ditch was in excess of the requirements of the land under it, “and was abandoned and unused by said company and its consumers, for any beneficial purpose, before this defendant became a consumer therefrom,” was not sustained by the evidence, but on the contrary, so far as the water in controversy was concerned, that prior to the purchase of the shares by Alford, in 1880, and from the construction of the Dry Creek ditch, the water represented by such shares had been used for irrigating by his grantors, and that the same had been used for the same purpose during his ownership, from 1880, to the time of his sale to plaintiff in error. Much time and space in the pleading of defendant in error was devoted to the decree establishing the priorities of the ditches, respectively, and alleging that the aggregate far exceeded the supply from the common source (in some instances, far in excess of the requirements of the appropriately), in stating the great demand that existed, and the necessities of different crops in different localities at different seasons, and arguing the necessity-of an equitable distribu *241 tion of the water of the stream to all consumers; such argument being apparently based upon the necessities of the consumers, and not upon the legal rights of appropriation, priority, and application to a beneficial use, all of which may be disregarded in the discussion of this case. While an equitable distribution of the water of the stream, to all having cultivatable land under any of the ditches, regardless oE priorities, might greatly enhance the benefits from the use of the water, such equitable distribution is impossible, under the constitution and existing laws, where the respective rights of claimants are made to depend upon dates of appropriation. The decree of the district court as to the respective rights of the different claimants in this case, although it may be attacked, cannot be revised in this proceeding. Hence many allegations in the pleadings may be eliminated and disregarded, as the legal rights must be determined from the evidence, under the decree establishing the priorities.
It is contended that, previous to the diversion of water from Dry creek to the reservoir, surplus water from the ditch was turned into Dry creek, passed down such stream, and was discharged into the river, increasing its volume, and the supply of defendant in error at the head of the ditch; and that by such diversion its rightful supply was diminished. Previous to the diversion to the reservoir, whatever excess of water there was carried by the Dry Creek ditch was discharged into Dry creek at a point, including its sinuosities, over six miles above its mouth. Prom its mouth to the head of the ditch of defendant in error is about six miles. According to the evidence, Dry creek is what its name indicates,— except in freshets and storms, a dry sand bed, with‘no running water. Such was shown to be its condition whenever the river was low, and during the months of July, August, and September of almost every year, — the months in which defendant in error claimed injury from the diversion of water by the Reservoir Company. The evidence conclusively shows that prior to the taking of water to the reservoir, during th'e months that the river was low, there was no surplus water *242 carried in the Dry Creek ditch, — on the contrary, that at times the supply was inadequate for the land in cultivation under the ditch, and consumers were compelled to exchange water, and irrigate in turn. The evidence fails to show that, during the months when the water was needed, there was any appreciable diminution of the water at this ditch of defendant in error by reason of the diversion for the reservoir. Defendant in error attempted to establish the fact, but signally failed. B. F. La Grange, called by defendant in error, who was probably more familiar with the facts than any other person in the district, — had been water commissioner for the district for several years, and was a stockholder in the ditch of defendant in error, — would not, though asked, testify to anj’- diminution by reason of the diversion or failure to discharge water into Dry creek. He would not even go to the extent of saying that, if all the water taken by the Dry Creek ditch was turned into the river, the supply of the ditch of defendant in error would be increased, but testified as follows : “ I mean to be understood as sa3ung, if priority No. 2 was shut down, or in a condition of nonuse, some of it might go to priority No. 37, belonging to plaintiff’s canal. It depends on the condition of things. If it was turned into the river, it belongs to the volume of water in the river. Without knowing the exact conditions, I could not say where it would go.” Nor did any witness testify that the water of the canal was diminished in quantity by the failure to turn the whole amount diverted into the bed of Dry creek. There were those who expressed such opinion, based upon no data of investigation. The evidence establishing the supposed injury was too indefinite and uncertain to warrant the finding of the fact. Given, in the dry season, a continuous bed • of dry sand, of indefinite depth, for over six miles, without proof of bed rock or channel under the sand, where the small body of water is absorbed, it is an important question of fact whether the entire amount of water is not exhausted by evaporation, or whether, percolating through the sand for that distance, any appreciable amount of water would be dis *243 charged during the irrigating season; also whether, if any available amount of water was discharged by Dry creek, it would, in time of scarcity, reach and pass the intervening ditches, in its six miles of travel, and add to the volume of the canal of defendant in error. The fact of the actual diminution of supply of water in the ditch by reason of the diversion is in no way established by satisfactory evidence, but rests upon supposition and conjecture, and the wrong complained of is so remote and intangible that the remedy by injunction was unwarranted.
Whether the issues of fact are tried at law, and based upon the verdict of a jury, or by the court in equity, the result is the same, — a judgment or decree establishing the lights of the respective parties. In cases of this character, for the alleged diversion of water, it has frequently been held that the complainant must first establish his rights at law, as well “ as a violation of those rights.” See Bliss v. Kennedy, 43 Ill. 67; High on Inj., sec. 870; Norris v. Hill, 1 Mich. 202. “ The evidence upon which a court will perpetuate an injunction in this class of cases must clearly establish the essential allegations of the bill, the burden of proof being on the complainant; and where the evidence consists only of the opinions of witnesses, there being great contrariety of opinion, it will not suffice to make an injunction perpetual.” Woodruff v. Lockerby, 8 Wis. 369. In this case no facts were established by actual test or experiments. The evidence was theoretical, — based upon hypothetical questions. No facts were demonstrated to show any diminution by reason of the diversion and use. No rule of equity is more conclusive and better established than that, to warrant a perpetual injunction, the right of the party, and the injury to be redressed, must clearly and conclusively be established, as fully as if found by the special verdict of a jury. An indispensable constitutional requirement is “ that the water must be applied to a beneficial use.” There is no violation shown of this fundamental requirement in this case. A conservation of the water in the reservoir is shown, to meet *244 exigencies of scarcity. It is then, without serious diminution, conveyed and applied to the crops. The distance from the Dry Creek ditch to the reservoir is so short that the only appreciable loss would be by evaporation from the reservoir. Whether the discharge into Dry creek, under the physical facts, would be an application to a beneficial use, is not determined by the evidence. The entire volume might be so permanently absorbed as to prevent its reaching the river in time to be of any practical use during the season of irrigation, or it might be dissipated by evaporation. Hence we find that the injury complained of was not so established by competent evidence as to warrant the decree of the court.
2. We are at a loss to understand upon what theory the court could discriminate between the Black and Terry stock and the Alford stock. The former had been applied to land subsequently covered by the reservoir. The latter had never been abandoned as alleged, and such fact was established by uncontradicted testimony; and, as shown by all the evidence upon that point, all the water drawn by the Dry Creek ditch, during the irrigating season, was used upon the land under it, and at times the supply was inadequate. It is true that all the water represented by the Alford stock was not used upon his land, but the evidence shows it, when not needed by him, to have been leased or let, and used by others under his ownership and control. Such want of personal use, under numerous decisions, has been held not to impair his right of property. If Dry Creek ditch was entitled to its priority,— which is unquestioned, — and Alford was entitled to a given quantity of such priority, and such water was legitimately used upon the land under the ditch, whether applied in person, or rented to others, was a question that could in no way affect the legal rights of defendant in error. See Meagher v. Hardenbrook, 11 Mont. 385. It is now the settled law that water rights, though primarily applied to a certain tract of land, may be severed from it, used on other land by the owner, or be sold to any other consumer under the same ditch, or the ditch extended to apply the same water right *245 to other lands or uses, subject only to the limitation that the use and transfer shall not be injurious to a later appropriator. Strickler v. City of Colorado Springs, 16 Colo. 61; Nichols v. McIntosh, 19 Colo. 26; Bloom v. West, 3 Colo. App. 216; Fabian v. Collins, 2 Mont. 510. Consequently the diversion and new application of the water were questions in which the defendant in error had no concern, or legal right to interfere, unless clearly establishing the fact of the injury to its supply, which was not established. It was a question of indifference to it whether the water was turned into Dry creek and absorbed, or into the reservoir, and thence to the other canal. If, as previously shown, the property right in water is such that the owner can change its use from place to place at will, or sell it, and the purchaser, by extending an existing ditch, can apply it at any point, it seems unimportant whether the water is carried in the extended ditch, or some other with which it can be connected; and so long as it is a part of the legal priority to which the appropriating ditch is entitled, and the ownership undisputed, I can find no restrictions or limits as to the distance the owner may carry it, nor any decision requiring it to be returned into the stream above the head of a canal with junior rights. We are • clearly of the opinion that under the law and the evidence the rights of the purchaser were the same in the Alford stock as in that of Black and Terry, and that the owner had full legal right to connect the Dry Creek ditch with the reservoir, and carry all the water represented by the stock into it and from it, by any route available to carry it, and apply it to any land for the purpose of irrigation, and that the court erred in its decree as to the Alford stock, and in allowing a perpetual injunction. The judgment and decree of the district court will be reversed, and the cause remanded, with instructions to dissolve the injunction, and for such further proceedings as the parties may desire.

Reversed.

Thomson, J., concurs.
Bissell, J., not sitting.