THE W. H. HOWELL COMPANY

*v.*

THE CHARLES POPE GLUCOSE COMPANY *et al.*

*Opinion filed February 14, 1898.*

1. INJUNCTION—*injunction will not lie to adjust rights to water power not established by law.* Equity will not interfere by injunction to settle the respective rights of parties to the use of water power, unless such rights have been definitely established at law.

2. SAME—*when equity will not enjoin use of water power nights and on Sundays.* Equity will not enjoin one of the parties entitled to water power from running his plant nights and Sundays, upon the ground that because the water was not allowed to accumulate at such times the other parties entitled to use the same dam were unable to obtain sufficient water to run their plants, where nothing appears to show that the rights of the respective parties had been established at law, and that the defendant was taking more water than he was entitled to use.

*W. H. Howell Co.* v. *Pope Glucose Co.* 61 Ill. App. 593, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. HENRY B. WILLES, Judge, presiding.

CHARLES WHEATON, for appellant:

A riparian proprietor is entitled to an injunction to restrain a threatened unlawful diversion of the waters of a stream flowing through his land, without first establishing his right at law. *Lux* v. *Haggin,* 69 Cal. 255; 70 Wis. 659; *Belknap* v. *Trimble,* 3 Paige's Ch. 577; *Arthur* v. *Case,* 1 id. 447.

A court of equity may issue an injunction to prevent the interruption of the right to the use of water, before the plaintiff has established his title at law. *Gardner* v. *Village of Newburg,* 2 Johns. Ch. 162.

The riparian proprietors of a private stream, being entitled to the use of the stream without diminution or alteration, will be protected by injunction from the violation of their right. *Howe* v. *Norman,* 13 R. I. 488; *Brown*

v. *Axley,* 16 Nev. 311; *Bitting's Appeal,* 105 Pa. St. 617; *Weis* v. *Oregon I. & S. Co.* 13 Ore. 496; *Heilbron* v. *Canal Co.* 75 Cal. 426; *Early's Appeal,* 121 Pa. St. 496; *Woodruff* v. *Lockerly,* 8 Wis. 369; *Morril* v. *Water Power Co.* 26 Minn. 222; *Fuller* v. *Daniels,* 63 N. H. 395; *Higgins* v. *Water Co.* 36 N. J. Eq. 538; *Mudge* v. *Salisbury,* 110 N. Y. 413; *Hoopman* v. *Blodget,* 70 Mich. 610.

When there is an injury to the owner's use of water he need not resort to an action to damages; neither need he show the injury is irreparable to entitle him to an injunction. *Brown* v. *Frankfort,* (Ky.) 9 S. W. Rep. 384; *Proprietors of Mills* v. *Braintree Water Supply Co.* 149 Mass. 478.

The use of water by one proprietor must be of such a character as not to deprive any other proprietor of his use of the water to which he may be entitled. In other words, the use of water by each proprietor must be reasonable, and the reasonableness is not to be measured by the necessities of business, but by the circumstances of the condition and stage of water and the rights of complainant and other owners of water power on the stream. *Gould* v. *Boston Duck Co.* 13 Gray, 442; *Thurber* v. *Martin,* 2 id. 394; *Timm* v. *Bear,* 22 Wis. 254; Washburn on Easements, p. 266, sec. 26; Angell on Water-courses, secs. 93 *a,* 95, 115, 117, and notes, 118, 119, 119 *a,* 128, 129; Gould on Waters, sec. 208; *Brace* v. *Yale,* 10 Allen, 447; *Wheatley* v. *Christman,* 24 Pa. St. 298; *Perley* v. *Marshall,* 57 N. H. 206; *Springfield* v. *Norris,* 4 Allen, 494; *Weedin* v. *Wentworth,* 57 Mich. 278; *Davis* v. *Getchel,* 50 Me. 602; *Elliott* v. *Railroad Co.* 10 Cush. 195; *Whitney* v. *Wheeler Cotton Mills,* 151 Mass. 396; *Heeney* v. *Union Manf. Co.* 39 Conn. 576; *Evans* v. *Merryweather,* 3 Scam. 492; *Hadden* v. *Shoutz,* 15 Ill. 581.

A. J. HOPKINS, F. H. THATCHER, and F. A. DOLPH, for appellees:

The question of what is a reasonable use of water is a question of fact, to be determined by the jury from the evidence. *Batavia Manf. Co.* v. *Wagon Co.* 91 Ill. 246.

A court of chancery cannot take jurisdiction until the rights of riparian owners to the reasonable use of water have been determined by a jury. *Druley* v. *Adams*, 102 Ill. 177; *Batavia Manf. Co.* v. *Wagon Co.* 91 id. 246.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Kane county, against the appellees, for the purpose of obtaining a decree restraining the appellees from using the water collected by a dam across Fox river at Geneva, Illinois, for the purpose of operating its glucose works at nights and on Sundays. The circuit court sustained a demurrer to the bill and entered a decree dismissing it for want of equity. The decree was affirmed by the Appellate Court for the Second District. This is an appeal from the judgment of the Appellate Court.

The only question presented is, whether the circuit court correctly ruled the bill was insufficient to warrant a decree granting the relief prayed for.

The bill alleged, in substance, that a dam was erected across Fox river at Geneva, Illinois, over fifty years ago, for the purpose of creating water power; that through various conveyances the complainant and other owners had become tenants in common of the water and water power at that place, as follows: 1482 inches on the east side of the river to Bennett & Gates, to be drawn on the east side of the river; 300 inches on the east side of the river to the W. H. Howell Company, to be drawn on the east side; 500 inches to the W. H. Howell Company, to be drawn on the west side of the river; and 1250 inches to the Charles Pope Glucose Company, to be drawn on the west side of the river; that said owners were entitled to use, and did use, for manufacturing purposes the water power, Bennett & Gates for a large flouring mill, the Charles Pope Glucose Company for a glucose factory, the W. H. Howell Company the 300 inches on the east side for a flouring mill and the 500 inches on the west side for

a foundry; that the respective owners were entitled to the water called for in their conveyances in a reasonable manner and at reasonable hours only; that in dry seasons of the year Fox river does not furnish the full amount of water called for by the conveyances, nor to supply the wants of the mills and factories, if run continuously; that to obviate that difficulty and to give each owner a supply in proportion to proprietorship, it had been the custom at Geneva, as well as at St. Charles, Elgin and other points upon Fox river where dams were maintained to furnish water power, to shut down the mills and factories on nights and Sundays, so that water would accumulate for their use in day time of week days; that such a course is necessary to enable the respective owners, in times of low water, to have a fair and reasonable use of the water during the usual hours of the day and the working days of the week; that the glucose company, in disregard of the conditions and rights of the other owners, has during the low water operated its factory by water power, not only during the usual working hours in day time, but during every hour of the night and Sunday, thereby exhausting the water and preventing an accumulation of it in the mill-pond; that the effect of such continuous and incessant use of water is to deprive appellant and other owners of any use of the water power created by the dam, and that such use of the water is unreasonable and works great damage to the business of the appellant.

The bill prays for an injunction restraining the glucose company from using the water power on nights and Sundays, or at hours and times that are unusual and unreasonable for such use, and that upon a final hearing of the cause the defendants and complainant in the bill be decreed to have the use and enjoyment of their water power only in a reasonable manner and at reasonable times, in proportion to the capacity of Fox river, and that the defendant company be perpetually enjoined from running the water wheels of its factory nights and Sundays

171—23

while the mills above Geneva are shut down and the water in the ponds is low, and it be restricted in its use of the water to the usual and reasonable hours of week days.

Upon the filing of the bill the master in chancery granted a temporary injunction, as prayed for. Appellees filed a demurrer to the bill. The circuit court sustained the demurrer, dissolved the injunction and dismissed the bill for want of equity.

It will be observed it is not charged in the bill the appellee company had diverted, or intended to divert, the water from its proper channel or bed, or that it was without right to take and use the water for the purpose of operating its machinery, nor is it alleged a greater quantity was used by reason of the work at night and on Sundays than the number of inches appellee company was entitled to take. The bill concedes, in fact, that the appellee company has, with the appellant, like lawful right to use the water, but the complaint is, that the stage of the water was low in consequence of a long-continued drouth, and that there was an insufficient quantity of water to supply the appellees' works, if the same should be run constantly during the day and night and also on Sundays, without so exhausting the supply as to deprive the appellant of the quantity necessary to run its plant, and the theory upon which appellant grounded its bill is, that under all the circumstances the use made of the water by the appellee company at nights and on Sundays was unreasonable and inflicted damage upon it, and ought to be prohibited by injunction.

In order to determine this controversy it would have been necessary, had the circuit court retained the bill, the chancellor should hear evidence necessary to enable him to settle and adjust the respective rights of the parties to the use of the water, and to determine how much each one was entitled to use while the exceptional circumstances continued, and to declare in a decree the limitations upon the right of the appellee company to take

water at night and on Sunday with such precision and certainty that a restraining order could be enforced. We do not think the rights of the parties, with reference to the use of the water under the circumstances, are disclosed by the bill or are capable of being determined with that precision, certainty and accuracy that is necessary in order to justify a court of equity in assuming to control the action of the appellees, with reference to the use of water in the operation of their manufacturing establishments, by the extraordinary writ of injunction. The appellant should first have resorted to an action at law, which, if successful, would have probably proved adequate to compensate it for any loss and also to prevent a repetition of the acts complained of, or if it did not prevent repetition, would have established a substantial foundation for the exercise of the restraining power of a court of equity.

We think the case falls within the principle announced by this court in *Bliss* v. *Kennedy*, 43 Ill. 67, where it was said (p. 75): "The complainants having established no exclusive right to the use of this water, as against the defendants, by virtue of any covenants on the part of all or either of them, having, as the evidence proves, prior occupancy or use of the stream, and there being an insufficient supply of water for both factories in dry seasons, and prior occupancy giving no exclusive right, it is then a question for the jury, and not for the court, to determine, under all the circumstances, how the water has been appropriated. This case, then, is not yet matured for the chancellor. Under the circumstances developed by this record the appellants have no right to resort to a court of equity until they shall have established their right at law. To authorize the interposition of chancery by injunction,—a writ which may, in its operation, produce incalculable damage to a manufacturer, against the prosecution of whose legitimate business it is required to issue and does issue,—justice requires there should be

first established not only a clear and palpable violation of the alleged rights of the party complaining, but the rights themselves should be certain, undoubted and such as have been ascertained by the verdict of a jury, and can be, thereby, clearly ascertained and measured. When the right is thus established, the aid of a court of chancery to protect appellants in the full enjoyment of it will not be invoked in vain. An examination of authorities on this subject will show that in cases like this the right of the party must first be established at law, before the restraining arm of chancery can be called into exercise. 1 Daniell's Ch. Pr. (Perkins' ed.) 573, referring to *Weller* v. *Smeason*, 1 Cox, 102."

High, in his work on Injunctions, (vol. 1, sec. 881,) declares equity will not interfere to settle and adjust the respective rights of parties to the use of water, nor to determine how much each is entitled to use, unless complainant has established definitely what his rights are.

The cases of *Olmstead* v. *Loomis*, 6 Barb. 152, and *Fisk* v. *Wilber*, 7 id. 395, called upon the Supreme Court of New York to pass upon the same question now under discussion, and in the first of said cases, after a full consideration, the court was moved to declare: "It seems to us, therefore, that the difficulties in the way of attempting to restrain these parties within the limits of their legal rights by process of injunction are insuperable." And in the latter of said cases it was said: "How are we to ascertain the exact quantity of water to which each party is entitled, so that an injunction may be safely decreed, so that the mandate of the court shall be certain? Suppose we should be satisfied that the defendants had used more water than they were entitled to use; without being able to ascertain the excess, how shall we prevent them from repeating the injury? An injunction which should merely command them to desist from using more than their just proportion of water would be very difficult to enforce. It is therefore obvious that the court should

only interpose by injunction in cases where the subject of it is clear, definite and certain. * * * As a general rule, an approximation to correctness is all that can be attained, and the damages which a court of law has in its power to grant to the injured party will generally be the safest remedy, and in most cases amply sufficient to protect the parties in the enjoyment of their rights. We repeat, that the equitable powers of the court should only be invoked in a case where the subject is capable of being clearly ascertained, and then only to prevent great and irreparable injury."

The decree must be and is affirmed.

*Decree affirmed.*