WILLIAM D. ALLOTT *et al.* Defendants in Error, *vs.* THE
AMERICAN STRAWBOARD COMPANY *et al.* Plaintiffs in
Error.

*Opinion filed December 15, 1908.*

1. CLOUD ON TITLE—*cloud on title defined.* A cloud on a title
is a semblance of a title, either legal or equitable, or a claim of
an interest in lands, appearing in some legal form, but which is, in
fact, unfounded.

2. SAME—*when cloud on title exists.* A cloud on title exists
where the claim of the adverse party is valid on the face of the
instrument or proceeding sought to be set aside and extrinsic facts
are necessary in order to show that such instrument or proceed-
ing is invalid.

3. SAME—*bill does not lie to remove verbal claim or oral as-
sertion of ownership.* Such clouds upon title as may be removed
by courts of equity are instruments or other proceedings in writing
which appear upon the records and thereby cast doubt upon the
validity of the record title.

4. INJUNCTION—*injunction will not be granted unless complain-
ant shows he will be injured.* A court of equity will not issue an
injunction unless the complainant shows he will be injured if re-
lief is not granted, and the allegations of the bill must be clear
and be supported by satisfactory evidence that substantial injury
will be sustained.

5. SAME—*complainant's rights must be such as can be clearly
ascertained.* To authorize an injunction there should not only be
a clear and palpable violation of the rights of the complainant, but
the rights themselves must be certain and such as can be clearly
ascertained and measured.

6. SAME—*court of equity will not do a vain thing.* A court of
equity will not issue an injunction merely to allay unfounded fears
or apprehension, nor will it entertain a bill simply to vindicate an
abstract principle of justice.

WRIT OF ERROR to the Circuit Court of Will county;
the Hon. FRANK L. HOOPER, Judge, presiding.

The original bill in this case was filed September 9, 1904,
against the American Strawboard Company and two of the
other plaintiffs in error, asking that they be restrained from

taking or continuing in possession of an abutment of a dam on block 16, Alden's Island addition to Wilmington, or the abutment to said dam on the opposite shore of the Kankakee river, or of the lands between said abutments, and from proceeding to erect a dam across the Kankakee river at said place or so near as to interfere with complainants in maintaining a dam there, except as such plaintiffs in error might proceed in accordance with certain provisions and restrictions of certain deeds of July 28, 1838, executed by Thomas Cox and others to A. B. Bowen and others, and that the rights of all parties as to the maintenance and control of the five-foot dam at said place and the rights of the parties to the water power derived from such dam might be defined and declared. No injunction was ever issued in the case. Subsequently, on May 16, 1905, an amendment was filed adding as parties other persons owning or claiming to own certain lots and the right to have power from the dam. Answers were filed, and, on issues being joined, testimony was taken, which shows that in the Kankakee river, in this locality, is situated Alden's island. The river, flowing in a northerly direction, is divided thereby into two streams, the largest one originally flowing on the west side of the island. The river has been used for water power at that point since about 1838. At that time the land and water rights were owned jointly by Thomas and Joseph Cox and A. B. Bowen, who afterward divided the property between them by deeds. The land on the east bank of the east branch was platted into water lots and sold to various parties by the Coxes and Bowen, and by *mesne* conveyances the title to the respective lots is now in the various defendants in error. Several mills, including a paper mill operated by the American Strawboard Company, are situated on these water lots and are run a part of the time by power obtained from a raceway running out of the east channel. One of these early deeds includes, among other rights granted, "the privilege of letting and drawing off from the mill race

at said lot 11, also 72 inches of water from the mill race at any place on the premises hereby conveyed, and of reserving 884 inches of water to be drawn from said mill or point at said lot 1, and water sufficient to run a saw mill, and 72 inches of water to be drawn from the mill race at lot 10 of water lots, the one-half of all the remaining water in the mill race, together with all and singular the hereditaments and appurtenances," etc. Some of the other deeds contain provisions of the same nature. There are also provisions as to the building and repairing of the mill dam and other portions of the work connected with the water power, in proportion to the respective rights.

About 1838 a raceway was constructed, leading out from the east channel of the river, across the water lots and into the river again. At about the same time a dam was erected across the west channel of the river at the upper or southern end of the island. This dam has been replaced from time to time, first being built of brush, then of boulders, and then a wooden dam five feet high was erected in 1871, all at substantially the same point in the river. Before the dam was built in 1871 there was a dispute as to whether it should not be constructed six feet in height, but after conferences the parties interested decided upon a five-foot dam, and it appears to have been built by the Kankakee Company, largely for the purpose of facilitating navigation of the river by that company. Water gates were put in at the upper end of the east channel to regulate the flow of water therein. The Kankakee Company navigated tugs and barges on the river for a number of years, but in 1881 or 1882 ceased its operations and refused to pay for repairs on the water gates or dam. Evidently the main part of the cost of keeping the dam and water gates in repair for many years thereafter was met by the owners of the water lots on the race and by the city of Wilmington. A part of Alden's island is used by the city as a wooded park, and the city's interest in the water gates

seems to be largely to use them as flood gates to control the water when it is high.

Up to 1871 there appears to have been no controversy relative to the water power. . Since that date the five-foot dam continued to exist, with some repairs, until January, 1904, when a portion of it was swept away, and there then arose some controversy as to when and by whom it should be re-built. Defendants in error erected a small wire enclosure around the east abutment, which is on land owned by them, had a tent placed there, and hired a man to live in the tent and watch the property. They also had a small amount of filling and other work done at various places. There is some evidence tending to show that they claimed that they were intending to build a new dam on a much larger scale than had been built before, and one of the defendants in error testified that he had a conversation with a representative of the American Strawboard Company to the effect that he wanted the parties in interest to get together, and that he did not object to building a new dam at that point at the joint expense of the defendants and the plaintiffs in error, provided it was so constructed as to serve for the foundation of a higher structure when that should be commenced, but nothing definite came of this talk. The owners of the water power rights shortly thereafter started to re-build the dam, and the original bill in this case seems to have been filed at about that time, but no injunction was issued, and it appears from the pleadings and from the evidence taken that during the pendency of the suit, and before the amended bill was filed adding the new defendants, the dam was re-built as a five-foot dam, at the same height as it had existed from 1871.

The circuit court of Will county, at the January term, 1908, entered a decree finding that whatever rights plaintiffs in error had, arose under their deeds and not by prescription, and further finding "that the right to control the flow of water in said east channel in excess of what is re-

quired to supply the defendant owners of water power with the flow to which they are entitled under their respective grants is a valuable property owned and possessed by the complainants, and that the assertion of said claims of the defendants, and the assertion of the right to have other water power than that defined by their respective grants, under which they derive title, as aforesaid, made in connection with the use of water power, and the exercise of the authority which they rightfully have to make repairs on said dam and for such purpose to exercise a limited right of possession, in connection with the fact that the complainants have made no use of the surplus power afforded by said dam for a period of years, constitute a cloud upon the title of the complainants aforesaid which tends to greatly impair the value of the complainants' aforesaid property; and the complainants, under the conditions aforesaid, being without adequate remedy at law, the court doth find and decree that the rights of the said defendants to water power and to the control of the said dam at the south end of Alden's island are such, only, as they have acquired aforesaid by deed or grant and as are defined and limited by their respective grants, and that they are without title or authority to have possession of or to exercise control over the said dam except as authorized by said deeds," etc. The court further found that by reason of waiver of counsel on one side and objections on the other it would not attempt to adjudicate or determine the rights of the several defendants, under their respective deeds, as to the particular amount of water or power limited under such deeds, as the determination of such respective rights was not material or essential to the determination of the other questions. From that decree this writ of error has been sued out.

J. L. O'Donnell, and T. F. Donovan, (James Todd, of counsel,) for plaintiffs in error.

Rufus Cope, for defendant in error William Allott.

Mr. JUSTICE CARTER delivered the opinion of the court:

Manifestly, from this record the only thing attempted to be settled by the decree was the question whether the rights of the various plaintiffs in error arose solely from the deeds in question, or if they possessed an easement, acquired by prescription, in the use of water, over and above that called for by the deeds, to the amount such excess had habitually flowed through the east channel since the erection of the five-foot dam in 1871.

The only question we deem it necessary to discuss is the jurisdiction of a court of equity to grant the relief specified in said decree. The jurisdictional question is not raised by the pleadings and only incidentally in the briefs of plaintiffs in error, but this court may of its own motion interpose the objection of want of jurisdiction over the subject matter of the suit at any stage of the proceedings. (*Gage v. Schmidt,* 104 Ill. 106.) The jurisdiction of equity was invoked in the original bill to restrain plaintiffs in error from re-building the dam, but that part of the remedy is not now urged and does not seem to have been since the time the dam was re-built. The only remedy now urged giving equity jurisdiction is the settling of the rights of the parties, and the court by its decree entertained jurisdiction for that purpose on the ground that plaintiffs in error's claim to a part of the water rights by prescription amounted to a cloud upon the title of defendants in error.

A cloud on a title is a semblance of a title, either legal or equitable, or a claim of an interest in lands appearing in some legal form but which is, in fact, unfounded. (*Rigdon v. Shirk,* 127 Ill. 411.) It is a title or encumbrance apparently valid but actually invalid. (*Goodkind v. Bartlett,* 136 Ill. 18.) It exists where the claim of an adverse party to land is valid upon the face of the instrument or the proceeding sought to be set aside, and extrinsic facts are required to be established to show the supposed conveyance to be inoperative and void. (*Reed v. Tyler,* 56 Ill. 288.) This court

has held that a bill will not lie to remove a mere verbal claim or oral assertion of ownership in property as a cloud upon the title. Such clouds upon title as may be removed by courts of equity are instruments or other proceedings in writing which appear upon the records and thereby cast doubt upon the validity of the record title. (*Parker* v. *Shannon,* 121 Ill. 452.) See *Roby* v. *South Park Comrs.* 215 Ill. 200, as to whether the existence of an ordinance looking towards the condemnation of property, without any attempt to enforce it, would constitute a cloud upon the title. Up to the time the answers were filed in this proceeding there was nothing of record that would justify a court of equity in interfering to remove a cloud on the title of defendants in error. While it has been held that the semblance of a title, such as would justify the filing of a bill in equity to remove a cloud, may exist on account of the filing of a bill in equity claiming title to real estate, even though it had been dismissed on the merits, (*Shults* v. *Shults,* 159 Ill. 654,) yet defendants in error could control their own bill, no cross-bill having been filed, (*Langlois* v. *Matthiessen,* 155 Ill. 230,) and therefore, up to the time of entering the decree, they could dismiss it any time they saw fit. It is true that in other jurisdictions, under somewhat similar circumstances, courts of equity have taken jurisdiction to remove a cloud upon the title. (*Oman* v. *Bedford-Bowling Green Stone Co.* 134 Fed. Rep. 64; *Riverside Land and Irrigation Co.* v. *Jansen,* 66 Cal. 300; *Reservoir Co.* v. *Water Supply Co.* 27 Colo. 532; see, also, *Lyon* v. *Ross,* 4 Ky. 466; Gould on Waters,—3d ed.—sec. 519.) But it will be noted that in all those cases there appears to have been an immediate danger of rights being interfered with unless a court of equity assumed jurisdiction. It has been held that chancery will not intervene to sustain the right to a water-course, or to enjoin the use thereof, until after the legal title is first settled, the question in dispute being the construction of certain grants. (*Prentiss* v. *Larnard,* 11

Vt. 135.) · Where defendant asserted title to an easement in a water-course across complainant's premises, and had gone on the premises, without the complainant's consent, to repair the stream for more than twenty years, and had destroyed a gate erected by complainant to lessen the flow of water, equity would not take jurisdiction to quiet title in the easement until the legal right had been decided. (*DeHanne* v. *Bryant,* 61 N. J. Eq. 141; Farnham on Waters and Water Rights, secs. 474, 829.) It has been frequently held that in an attempt to obtain an injunction under circumstances similar to those set up on this record, equity will not interfere until the legal title has been established by law. (*Maloon·* v. *White,* 57 N. H. 152; *Outcalt* v. *Helme Co.* 42 N. J. Eq. 665; *Peters* v. *Hansen,* 55 Mich. 276; *State* v. *Sunapee Dam Co.* 70 N. H. 458.) Where three persons were severally in possession of certain lands bordering on a river, the lands of one being on the east bank and those of another on the west bank and those of the third on an island in the center, a court of equity properly refused to take jurisdiction to settle their respective rights as to the use of the water until such rights had been established at law. *Stolp* v. *Hoyt,* 44 Ill. 219; *Howell Co.* v. *Glucose Co.* 171 id. 350; *Bradfield* v. *Dewell,* 48 Mich. 9.

We are of the opinion that under the authorities in this State there was no such cloud on the title as to justify equity in taking jurisdiction here, either at the time of filing the original bill or when the decree was entered.

It may well be doubted, for another reason, whether equity should assume jurisdiction in this case. It has been repeatedly held that equity will not assume jurisdiction and issue an injunction unless the party complaining shows that he will be injured if relief is not granted. (*Shonk Tin Printing Co.* v. *Shonk,* 138 Ill. 34.) And it is also a rule that the allegations must be clear and distinct and supported by satisfactory evidence that substantial injury will be sustained. (*Springer* v. *Walters,* 139 Ill. 419.) It has also

been held that to authorize an injunction there should not
only be a clear and palpable violation of the rights of the
complainant, but the rights themselves should be certain
and such as can be clearly ascertained and measured. (*Olm-
sted* v. *Loomis,* 6 Barb. 152; *Tipping* v. *Eckersley,* 2 K. &
J. Ch. 264.)   The courts will not grant an injunction to
allay the fears or apprehensions of individuals unless there
is a reasonable probability of the threatened acts complained
of being committed. (16 Am. & Eng. Ency. of Law,—
2d ed.—p. 361.)   This same doctrine has been applied in
actions to settle title where the apprehensions appear to
be unfounded. (6 Am. & Eng. Ency. of Law,—2d ed.—
p. 153, and cases there cited.)   There is nothing shown in
this record which indicates that there is any reasonable
ground for believing that plaintiffs in error will undertake
to make any change in the dam, or in the use of the water
flowing through the east channel, to the detriment of the
defendants in error.   Furthermore, there is a controversy
as to whether, on this record, it could be positively and
certainly ascertained how high a dam the deeds in question
authorized to be constructed at the point in question or to
how much water plaintiffs in error were entitled under said
deeds.   Surely it cannot be claimed that a reading of the
deeds, in connection with the pleadings in this case, makes
those points clear and plain, and as we have said, the de-
cree does not attempt to settle this.   We cannot see that
the decree will be of any particular benefit to anyone, ex-
cept, perhaps, in so far as the fact that it finds, in a general
way, that plaintiffs in error have no prescriptive rights in
the water might be deemed of benefit to defendants in er-
ror's title.   While the decree found that the only rights of
plaintiffs in error arise under the deeds and not from pre-
scription, it does not attempt to settle the practical questions
involved, such as whether, under those deeds, plaintiffs in
error are entitled to have a five-foot dam at the point in
question, or whether the dam, if desired by plaintiffs in

error, could be erected higher, or whether it could be lowered, and how much water the deeds actually call for. The decree does not attempt to change the present condition of the dam. Defendants in error do not seek to deprive plaintiffs in error of the right to make repairs pursuant to the provisions of the deeds, and the decree does not attempt to regulate or change in any way the use of the water now being sent through the east channel by means of the dam and the gates at the upper or south end of said Alden's island. A court of equity is not called upon to do a vain thing, and it will not entertain a bill simply to vindicate an abstract principle of justice. *Patterson* v. *Northern Trust Co.* 230 Ill. 334; *Joliet and Chicago Railroad Co.* v. *Healy,* 94 id. 416; *Werden* v. *Graham,* 107 id. 169; *Seeger* v. *Mueller,* 133 id. 86; *Beattie* v. *Whipple,* 154 id. 273.

For the reasons stated equity does not have jurisdiction of the subject matter here in dispute. The decree of the circuit court is therefore reversed and the cause remanded, with directions to dismiss the bill without prejudice to further proceedings. *Reversed and remanded, with directions.*