Kathy NIELSON and Loren Domke,
Husband and Wife, Appellants,

v.

David BENTON and Lori
Telfer, Husband and
Wife, Appellees.

No. S–6107.

Supreme Court of Alaska.

Sept. 15, 1995.

Rehearing Denied Sept. 28, 1995.

Loren Domke, Loren Domke, P.C., Juneau, for Appellants.

Thomas W. Findley, Caroline Crenna, Dillon & Findley, P.C., Juneau, Sitka, for Appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

COMPTON, Justice.

## I. INTRODUCTION

This appeal arises out of a failed real estate transaction. Its resolution turns on the question of whether a dispute over the seaward boundary of a property, potentially giving the State of Alaska (State) a claim to part of the property, constitutes a cloud on title justifying rescission of the sales agreement. The superior court held that there was a cloud on title and granted rescission. We affirm in part, vacate in part, and remand for further proceedings relating to attorney's fees.

## II. FACTS AND PROCEEDINGS

Lori Telfer and David Benton entered into a contract to purchase real property from Loren Domke and Kathy Nielsen. The property in question is designated Lot 56 and is located at 17295 Glacier Highway, abutting Lena Cove seventeen miles from Juneau. On February 12, 1992, the parties entered into a contract designated "Earnest Money Receipt and Agreement to Purchase." The contract bound Telfer and Benton to purchase Lot 56 for $165,000, subject to terms and conditions stated therein. It set the closing for May 29. The following addendum to the contract was included:

> Buyers shall have an unconditional right to revoke this agreement without forfeiture of earnest money for any of the following:
>
> (a) structural defects;
>
> (b) clouds on the title;
>
> (c) unrecorded encroachments or unrecorded easements;
>
> (d) unavailability of bank financing due to conditions of the property.

After signing the contract Telfer and Benton initiated various procedures necessary to secure financing. The loan process and negotiations with the owner of property adjacent to 17295 Glacier Highway brought to light a variety of defects in the property. In May the discovery of these previously undisclosed imperfections caused Telfer and Benton to notify Domke and Nielsen that they wished to rescind the contract.

Domke and Nielson informed Telfer and Benton that they would treat the latter's actions as a repudiation of the contract and would file suit if an assurance of performance was not forthcoming. Upon reviewing the letter from Domke and Nielson, Telfer and Benton's attorney advised them that they might not be able to legally withdraw from the contract at that time. Telfer and Benton notified Domke and Nielson that they would continue to seek financing.

With the passage of time more deficiencies in the property surfaced, including the discovery that a seawall protecting the property and a section of the front yard potentially encroached on State-owned land.[1] As-built surveys of the lot prepared in 1981 (Plat of June 22, 1981) and 1992 (Plat of July 29, 1992) indicated that the seaward boundary of the lot was a line running across the front yard short of the seawall. A plat prepared on May 5, 1993 showed the seaward boundary of the lot to be beyond the seawall. According to two of the three surveys, it appeared that the State owned some portion of the lot.[2]

It is not disputed that Nielson and Domke had represented that the property they owned extended out to and included the seawall. Telfer and Benton consulted another attorney, who sent Domke and Nielson a letter expressing his clients' concerns with the property. The letter specifically communicated distress over the seawall and front yard. The letter informed Domke and Nielson that Telfer and Benton wished to rescind the earnest money agreement.

Domke and Nielson responded that the insufficiencies identified were insignificant and that they expected Telfer and Benton to continue to perform under the contract. To secure Telfer and Benton's performance, Domke and Nielson filed the suit from which

this appeal arises. Telfer and Benton responded by informing Domke and Nielson that before they would proceed with the loan application process, they would ask the court to ensure that the property's deficiencies would be remedied. Telfer and Benton's loan application was submitted and denied in September. Once the loan application was denied, Domke and Nielson demanded that Telfer and Benton seek a "non-conforming home loan." Telfer and Benton chose not to do this.

Initially Domke and Nielson sought both specific performance of the Earnest Money Receipt and Agreement to Purchase and damages for breach of contract. Telfer and Benton responded with a motion for summary judgment seeking rescission of the contract. Later Domke and Nielson filed a cross motion for summary judgment and withdrew their request for specific performance. The court granted Telfer and Benton's motion for summary judgment. The court found that the contract language itself provided grounds for rescission. The court reasoned that the disparate conclusions of the three surveys could only be resolved through an action to quiet title.[3] Thus, the uncertainty over the seaward boundary of the property was a cloud on the title justifying rescission of the contract. Accordingly, the court granted rescission and dismissed the other claims by both parties. Domke and Nielson moved for reconsideration after the State announced that it would not defend against the quiet title action. The motion was denied and this appeal followed.

## III. DISCUSSION

### A. Standard of Review

■ In reviewing a grant of summary judgment, this court must determine whether

---

1. Although Benton and Telfer discuss other alleged misrepresentations about the property, the only imperfection pertinent to this appeal is the dispute over the seaward boundary of the property.

2. The State's claim to this land results from the Federal Government's grant to the states of all submerged lands within their boundaries. *See* 43 U.S.C. § 1311 (1986).

3. In a separate action Domke and Nielson filed a suit to quiet title to the front yard and seawall. The court found the filing of this action "to be at least a tacit admission by the plaintiffs that there was, indeed, a cloud upon their title." After summary judgment was granted in the instant case, the Department of Natural Resources, Division of Lands, disclaimed in writing any interest in defending the quiet title action.

any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law. *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992). We review *de novo* an order granting summary judgment. *Tongass Sport Fishing Ass'n v. State,* 866 P.2d 1314, 1317 (Alaska 1994).

B. *The Superior Court Correctly Concluded That There Was a Cloud on Title to 17295 Glacier Highway Justifying Rescission of the Sales Contract at Issue*

■■■ Under the plain language of the Earnest Money Receipt and Agreement to Purchase, Telfer and Benton are entitled to rescission of the agreement. The revocation is provided for by the following language included in the addendum to the sales agreement:

> Buyers shall have an unconditional right to revoke this agreement without forfeiture of earnest money for any of the following:
>
> . . . .
>
> **clouds on the title.**

(Emphasis added). The superior court found that the uncertainty over the property's boundary line created a cloud on title. The court found that "the only way to resolve the uncertainty of the extent of Lot 56 [17295 Glacier Highway] is for the owner of the lot to bring an action to quiet title." The court reasoned that where a lawsuit is necessary to determine title to part of the property, there is clearly a cloud on the title to that property. The superior court was correct.

Domke and Nielson argue that there was no cloud on title to the property, because there was no uncertainty over the seaward boundary. They claim that extending the yard over the original meander line did not create uncertainty in the title, because at the time of oral argument no evidence of uncertainty was produced. It is their position that the location of the seaward property boundary was at the mean high water mark, as a

matter of law, and that the May 1993 survey clearly established this line to be down the beach from the yard. They further argue that the certainty of the seaward boundary was established when the Department of Natural Resources (DNR) refused to defend the quiet title action.

■■■ Domke and Nielson's argument relies on the fact that after they filed a quiet title action, DNR refused to defend the action. However, the validity of the State's potential claim, after the quiet title action was brought, is not pertinent. "A cloud on title is an outstanding claim or incumbrance which, if valid, would affect or impair the title of the owner of a particular estate." *Newpar Estates v. Barilla,* 161 N.Y.S.2d 950, 952 (N.Y.Sup.Ct.1957), *rev'd on other grounds,* 4 A.D.2d 186, 164 N.Y.S.2d 132 (N.Y.App.Div. 1957). To be a cloud on title the claim need not be valid, it need only be colorable until removed by a quiet title action. *See Beal v. Mars Larsen Ranch Corp., Inc.,* 99 Idaho 662, 667, 586 P.2d 1378, 1383 (1978) (a cloud on title is an outstanding instrument, record, claim, or encumbrance which although actually invalid or inoperative, may nevertheless impair the title to property).[4] A cloud on title is removed when "shown by extrinsic proof to be invalid or inapplicable to the estate in question." 74 C.J.S.. *Quieting Title* § 12 (1994). The test for whether there is a cloud on title is whether the owner would be required to offer evidence to defeat an action based on the alleged cloud. *Allott v. American Strawboard,* 237 Ill. 55, 86 N.E. 685, 688 (1908); *Haggart & McMasters v. Chapman–Dewey Land Co.,* 77 Ark. 527, 92 S.W. 792 (1906); 74 C.J.S. *Quieting Title* § 13 (1951).

■■■ According to two of the surveys, the State had a colorable claim to some portion of the property. The State potentially owned this land, because the Federal Government had granted to the states all submerged lands within their boundaries. *See* 43 U.S.C. § 1311 (1986). The appearance that the State had at least a colorable claim

---

**4.** *See also Vanguard Equities, Inc. v. Sellers,* 587 S.W.2d 521, 525 (Tex.1979) ("a cloud on title is an outstanding claim or encumbrance apparently valid, but in fact, invalid"); *Pepper v. Pyramid Oil & Gas Corp.,* 287 So.2d 620, 623–24 (La.App.

1973); *York v. Newman,* 2 N.C.App. 484, 163 S.E.2d 282, 285 (1968) ("A cloud upon title ... shows *prima facie* the right of a third party either to the whole or some interest in it, or to a lien upon it.").

to part of the lot was created by the July 1992 and June 1981 surveys, coupled with statements made by a DNR employee prior to the filing of the quiet title action that the seawall and yard encroached on State land. Both the superior court and the DNR postulated that the only way to ensure that the owner of this property owned the entire front yard was to bring a quiet title action.[5] Such an action would have required the owner to present extrinsic evidence. The mere fact that this evidence would be required to clear the title is enough to create a cloud on title. *See* 74 C.J.S. *Quieting Title* § 13 (1951).[6]

### C. Domke and Nielson Were Not Wrongfully Denied an Opportunity to Cure the Title to 17295 Glacier Highway

 Generally, a buyer of real property who discovers defects in the title must make those defects known to the seller and must allow the seller a reasonable time to cure. *Callister v. Millstream Assocs., Inc.,* 738 P.2d 662, 664 (Utah App.1987). However, the contract itself may define the period during which the seller may cure a defect. *See Bailey v. First Mortgage Corp. of Boca Raton,* 478 So.2d 502 (Fla.App.1985). Thus, the question is not what remedies equity might provide Domke and Nielson, but whether the contract requires or implies that Domke and Nielson be allowed an opportunity to cure.

5. Tacitly, Domke and Nielson must also have believed this to be the case because they eventually brought such action.

6. Domke and Nielson insist that the disparity between the June 1981, July 1992, and May 1993 surveys only created the possibility of a boundary dispute with the State and this possibility is not sufficient to create a cloud on title. They are correct that mere apprehension on the part of a property owner that an adverse claim of title or interest may be asserted against him. does not constitute a cloud on title. *See Frontage, Inc. v. Allegheny County,* 400 Pa. 249, 162 A.2d 1, 6 (1960); *Lansburgh v. Market St. Ry. Co.,* 98 Cal. App.2d 426, 220 P.2d 423 (1950). However, a claim which causes "reasonable fear that it may be asserted against the owner injuriously" does constitute a cloud on title. *See* I. Blum, Annotation, *What Constitutes Cloud on Title Removable in Equity,* 78 A.L.R. 24, 44 (1932); 74 C.J.S. *Quieting Title* § 13 (1951). Here there was more than a mere apprehension that the State might

The contract does not expressly designate any time within which the sellers have an opportunity to cure defects in the title. Moreover, the plain language of the contract gives Benton and Telfer "an unconditional right to revoke this agreement without forfeiture of earnest money for ... clouds on title." This express grant to the buyers of an unconditional right to revoke is inconsistent with an implied right to cure in the sellers. We will not engage in legal fictions by interpreting the simple language of this addendum to require conditions precedent to repudiation. We interpret "unconditional" to mean without limitation or restriction. *See Black's Law Dictionary* 1367 (5th ed. 1979); *Webster's II,* 1255 (1988) ("Being without conditions or limitations: absolute."). Thus, Benton and Telfer had an unconditional right to revoke upon discovering a cloud on title. They were not obligated to allow Nielson and Domke an opportunity to remove this cloud.

### D. The Attorney's Fee Award

 Apparently applying the version of Alaska Civil Rule 82 in effect prior to July 15, 1993, the superior court awarded Benton and Telfer $10,653.67 in costs and attorney's fees. Benton and Telfer claimed that they had spent a total of $21,631.16 on costs and attorney's fees. The award constituted approximately fifty percent of their total expenditures.

assert a claim to part of Lot 56. The 1992 and 1981 surveys and the State's advice that a quiet title action was necessary created a reasonable fear that a claim might have been asserted against the owner of the property.

Finally, Domke and Nielson contend that only recorded instruments or encumbrances should give rise to clouds on title. This is not the law. It has been established in other jurisdictions that clouds on title are not limited to recorded interests. *Buttrill v. Stanfield,* 198 Okla. 374, 178 P.2d 889 (1947); *Gardner v. Buckeye Sav. & Loan Co.,* 108 W.Va. 673, 152 S.E. 530, 532–33 (App. 1930); *See also Bank of America Nat. Trust & Sav. Ass'n v. Town of Atherton,* 60 Cal.App.2d 268, 140 P.2d 678 (1943). Additionally, this court has in the past assumed that non-recorded interests were clouds on title. *See Davis v. Tant,* 361 P.2d 763 (Alaska 1961) (referring to a non-recorded cloud on title).

Domke and Nielson challenge the award on three grounds: (1) the court erred in varying and increasing the fee award from the statutorily mandated twenty percent without explaining its reasons for doing so as required by amended Civil Rule 82;[7] (2) the court was unjustified in awarding more than twenty percent of the actual fees; and (3) the court erred in awarding paralegal fees.[8]

The language of current Civil Rule 82 became effective on July 15, 1993. According to Civil Rule 98, rule changes "govern all civil actions and proceedings thereafter commenced and so far as just and practicable all proceedings then pending." Alaska R.Civ.P. 98 (1994). Summary judgment was entered for Benton and Telfer on June 7, 1993. The parties submitted moving papers in June seeking a determination of which were the prevailing parties for the purpose of taxing costs and awarding attorney's fees. Benton and Telfer were adjudged the prevailing parties on August 16, 1993. They then filed motions for attorney's fees and costs, with documentation. Domke and Nielson opposed the motions in two pleadings, arguing that under amended Rule 82, effective July 15, 1993, no variance from the schedule should be allowed.

Attorney's fees were awarded on November 1, 1993. The superior court did not indicate under which version of Rule 82 it calculated its award, but we infer that the court applied the former version, due to the amount awarded and the manner in which it was awarded.

Although this "civil action or proceeding" commenced before the adoption of amended Rule 82, Benton and Telfer advance no persuasive reason—indeed, virtually no reason— why it is not just and practicable to apply amended Rule 82 to this proceeding, which was pending when the rule was amended. They simply assume that it did not apply to this proceeding, and thus it would have been a mistake not to have focused arguments before the superior court on the former version of Rule 82, instead of amended Rule 82. In the alternative, they argue that even under amended Rule 82, there is a basis for sustaining the superior court. They point out that under either version of Rule 82, the fee awarded is ultimately determined at the discretion of the trial judge.[9] Thus, it cannot be assumed that requiring the trial court to apply amended Rule 82 would change the amount of attorney's fees awarded.

It is true that the superior court might have awarded the same amount under amended Rule 82 as it did apparently under former Rule 82. However, we cannot indulge in speculation. Prior to the effective date of amended Rule 82, the parties had only addressed the prevailing party issue. No ink had yet been spilled on application of either version of the Rule to the particular facts of this case. Benton and Telfer do not

---

**7.** The current Civil Rule 82(b) provides:

(2) In cases in which the prevailing party recovers no money judgment, the court ... shall award the prevailing party in a case resolved without trial 20 percent of its actual attorney's fees which were necessarily incurred....

(3) The court may vary an attorney's fee award calculated under subparagraph (b)(1) or (2) of this rule if, upon consideration of the factors listed below, the court determines a variation is warranted.

....

If the court varies an award, the court shall explain the reasons for the variation. Alaska R.Civ.P. 82(b)(2)–(3).

**8.** Under Civil Rule 82(b)(2) an attorneys' fee award may include "fees for legal work customarily performed by an attorney but which was delegated to and performed by an investigator, paralegal or law clerk." Alaska R.Civ.P. 82(b)(2). Benton and Telfer included a $1,864.00 charge for paralegal work in their claim for attorneys' fees. Nielson and Domke contend that the paralegal work listed was secretarial work and not work normally performed by an attorney. They argue that none of this $1,864.00 should be charged as attorneys' fees.

On remand the superior court should review the paralegal work charged and determine what portion of this work may be included in the fee award under Alaska Rule of Civil Procedure 82(b)(2).

**9.** The prior language of Civil Rule 82 directed that "[s]hould no recovery be had, attorney's fees may be fixed by the court in its discretion in a reasonable amount." Former Alaska R.Civ.P. 82 (1992). The present language provides that a prevailing party who recovers no money judgment in a case without trial shall be awarded twenty percent of its fees, but that this amount may vary "if based on the factors listed [in 82(b)(3)], the court determines a variation is warranted." Alaska R.Civ.P. 82(b)(3) (1994).

claim reliance on former Rule 82 in making any decisions with respect to the litigation. It is "just and practicable" to apply amended Rule 82 to this pending proceeding. We conclude that the award of attorney's fees must be vacated and remanded to the superior court for redetermination in accordance with amended Rule 82.

## IV. CONCLUSION

The superior court's grant of summary judgment is AFFIRMED, because there existed a cloud on title which, under the contract, allowed the buyers an unconditional right to rescind the contract. The superior court did not err in denying Domke and Nielson an opportunity to cure the title they tendered. The attorney's fee award made under former Civil Rule 82(b)(3) is VACATED and the issue REMANDED to the superior court for redetermination in accordance with amended Rule 82.