Ava JOURDAN, Appellant,

v.

NATIONSBANC MORTGAGE CORPORATION; Federal Home Loan Mortgage Corporation ("Freddie Mac"); Richard Ullstrom; Richard Crabtree; Routh & Crabtree; Pacific Northwest Title Company; Stewart Title Company; and Charles R. Elder, Jr., Appellees.

No. S-9194.

Supreme Court of Alaska.

March 8, 2002.

---

Ava Jourdan, Anchorage, pro se.

Richard Ullstrom, Routh & Crabtree, APC, Anchorage, for Appellees Nationsbanc Mortgage Corporation, Federal Home Loan Mortgage Corporation, Richard Ullstrom, Richard Crabtree, and Routh & Crabtree.

No appearance by Appellees Pacific Northwest Title Company, Stewart Title Company and Charles R. Elder, Jr.

Before: FABE, Chief Justice, MATTHEWS, BRYNER, and CARPENETI, Justices.

### OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Ava Jourdan brings this action challenging the foreclosure of her residence. Jourdan claims that the superior court improperly granted summary judgment, arguing both that the foreclosure was procedurally flawed and that there existed material issues of factual dispute. Jourdan's various legal challenges have been heard before a number of superior court judges. We affirm all of the decisions of the superior court.

## II. STATEMENT OF FACTS

In December 1985 Charles Elder executed a deed of trust against a residence located at 1725 Amherst Circle in Anchorage to secure a note payable to Alaska Mutual Bank. Elder then deeded the property to Royalty Compa-ny, which was wholly owned by Ava Jourdan. The note and deed of trust were then assigned by the bank to the Federal Home Loan Mortgage Corporation (Freddie Mac).[1] A non-judicial foreclosure was initiated in 1991 after the payments on the note went into default. Jourdan stayed the foreclosure by putting Royalty Company into Chapter 11 bankruptcy. Royalty Company's bankruptcy was later converted to a Chapter 7 bankruptcy when Jourdan filed a personal Chapter 7 bankruptcy. Freddie Mac was able to obtain relief from the stay and recommence the foreclosure action. The foreclosure sale was conducted on February 10, 1994.

In early February 1994 Jourdan received a copy of a facsimile from Freddie Mac indicating that the amount of arrearages was approximately $35,000. Freddie Mac offered to accept one-half of the amount immediately and the other half over the course of the next six months in exchange for terminating the foreclosure proceedings. Jourdan responded by offering to pay $15,000 immediately and another $15,000 at the end of six months. This was unacceptable to Freddie Mac. On February 10, 1994, shortly before the foreclosure sale, Jourdan delivered a letter to Richard Ullstrom and Richard Crabtree, the attorneys handling the foreclosure, stating that she wished to accept Freddie Mac's offer of a "workout" agreement, but adding additional conditions. Ullstrom and Crabtree did not consider this to be a valid acceptance and proceeded with the foreclosure sale. Freddie Mac was the successful bidder at the sale.

On February 14, 1994, Jourdan filed a complaint seeking a temporary restraining order to halt the recording of the deed of trust. Superior Court Judge Milton M. Souter granted the restraining order and later issued a preliminary injunction on February 25 on the condition that Jourdan pay $17,500 by February 28, in line with the "workout" agreement Freddie Mac had offered Jourdan. Judge Souter ordered that the injunction was to expire on its own terms on February 28 if the necessary money was

---

1. There are eight parties listed in the case caption as appellees. The lawyers who filed the appellees' brief represent all appellees except for Pacific Northwest Title Company, Stewart Title Company and Charles R. Elder, Jr. The appellees will be referred to collectively as "Freddie Mac." Whether Elder and Stewart Title Company are parties to this case is in dispute.

not paid. When Jourdan failed to pay, Freddie Mac moved for partial summary judgment. On September 26, 1994, the superior court, Judge Souter again presiding, granted summary judgment as to contractual interference, punitive damages, bad faith dealing, injunctive relief, and disparate treatment. Jourdan moved in January 1995 to amend her complaint to repeat the two surviving counts—breach of contract and specific performance—and add claims of defective foreclosure, constructive eviction, invasion of privacy, unlawful forced entry, and intentional infliction of emotional distress. In a second motion to amend her complaint, Jourdan attempted to add claims of violating her right to enjoy her home, misuse of process, disparagement of character, deprivation of civil rights, malicious prosecution, and disparagement of title. This second amended complaint was not ruled upon by the trial court.

Oral argument was set for September 29, 1995, but Jourdan moved for and was granted an open-ended continuance based on an affidavit from her psychiatrist that for the time being she was "unable to deal with complex legal matters." In September 1996 Freddie Mac moved to require Jourdan to show cause why oral arguments should not proceed. Jourdan responded that the burden was on Freddie Mac to demonstrate that Jourdan was able to proceed. After Freddie Mac moved for the imposition of a conservatorship, Superior Court Judge Karen L. Hunt ruled that Jourdan was competent to conduct her own legal affairs. This order further required Jourdan to "reactivate" her pending civil litigation. When Jourdan failed to comply, Freddie Mac moved to proceed with oral argument, which was held before Judge Hunt on March 26, 1998 with Jourdan participating. On August 27, 1998, Judge Hunt granted partial summary judgment against Jourdan on the amended complaint. A request for partial judgment for possession

of the real property was granted, effective August 1, 1999. Jourdan filed a motion for reconsideration, which was denied by Superior Court Judge Stephanie E. Joannides. Jourdan now appeals.

## III. STANDARD OF REVIEW

We review summary judgment orders de novo.[2] "In reviewing a grant of summary judgment, this court must determine whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law."[3] We use our independent judgment in reviewing conclusions of law.[4] Findings of fact will only be reversed if "clearly erroneous."[5] A genuine issue of fact exists when reasonable jurors could differ on their interpretation of the evidence.[6]

## IV. DISCUSSION

### A. The Superior Court Properly Granted Summary Judgment on the Absence of a "Workout" Agreement.

 As a threshold issue, this court must decide whether the alleged "workout" agreement between Jourdan and Freddie Mac concerning the February 10, 1994 foreclosure sale precluded the entry of summary judgment against Jourdan with regard to possession of the house. Judge Hunt ruled that while there was a genuine issue of material fact as to whether a "workout" contract existed, Jourdan did not have the ability to perform on that contract. This conclusion was based in part upon Jourdan's inability to pay the $17,500 owed after the injunction was issued and the sale forestalled to give her the opportunity to pay. Under Alaska law, a plaintiff cannot collect damages in a breach of contract action without showing the willingness to perform his or her own obligation,[7] which in this case would be to pay

---

**2.** *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995).

**3.** *Id.* at 1051–52.

**4.** *R & Y, Inc. v. Municipality of Anchorage*, 34 P.3d 289, 292 (Alaska 2001).

**5.** *City of Hydaburg v. Hydaburg Co-op. Ass'n*, 858 P.2d 1131, 1135 (Alaska 1993).

**6.** *Bliss v. Bobich*, 971 P.2d 141, 145 n. 4 (Alaska 1998).

**7.** *T. Ferguson Constr., Inc. v. Sealaska Corp.*, 820 P.2d 1058, 1061 (Alaska 1991) ("An obligee who believes, for whatever reason, that the obligor will not or cannot perform without a breach, is always free to act on that belief.... If he can prove that his belief would have been confirmed,

the amount owed under the alleged "work-out" agreement. Because Jourdan was given the opportunity to pay her outstanding debt and did not, she cannot bring an action for breach of contract here.[8] Consequently, the summary judgment order against Jourdan was properly granted.[9]

### B. The Notice of Foreclosure Was Valid.

Jourdan alleges that the foreclosure action was invalid primarily due to the extended length of time between when notice of the sale was given and the sale itself. Jourdan notes that three years passed between the initial publication notice of the sale in the Anchorage Times[10] in August through September of 1991 and the foreclosure sale on February 10, 1994. However, notice of the sale was posted in the Alaska Journal of Commerce from November 15 to December 6, 1993, only a short time before the foreclosure sale. Because of the subsequent publication, it is not necessary for us to reach the issue of the potential invalidity of a notice published two and a half years before the actual sale took place.

Jourdan then claims that the place of publication of the second notice was insufficient to meet statutory requirements. Jourdan concedes the validity of publication in the Anchorage Times, but disputes the validity of the subsequent publication of notice in the Alaska Journal of Commerce on the grounds that it did not have a large enough readership. Alaska statutes require a notice of sale to be published in a newspaper that "has a total paid circulation or paid distribution of at least 500 copies, or 10 percent of the total population of the judicial district, whichever is less."[11] By Jourdan's own figures, the Alaska Journal of Commerce satisfies both requirements. Jourdan stipulates that the journal has 4,100 paid subscribers, well over the 500 subscriber threshold, and reaches ten percent of Anchorage's population.[12] Therefore, her objection here is without merit.

Jourdan also objects to the physical posting of the notice of sale, claiming the notice did not list the date of the foreclosure sale and was not posted at the courthouse. However, this requirement is not contained in the statute on sale of real property.[13] Notice was posted on November 9, 1993, though it is unclear what the stated date of sale was.[14] Any delay in the posting from the stated date

---

he is at least shielded from liability even if he has failed to give a performance that is due before that of the obligor or has, by making alternative arrangements, done an act that amounts to a repudiation.") (quoting from Restatement (Second) of Contracts § 251 cmt. b (1981)).

8. Jourdan does allege that there were disputed facts concerning the existence of a workout agreement, specifically that she had a potential buyer for the property. However, she does not dispute that in actuality she failed to pay the amount specified in the injunction.

9. Jourdan claims that her eviction violates the Homestead Act. See AS 38.09.010–900. The land on which Jourdan's house is located has not been designated as land for homestead entry. Thus, the Homestead Act does not apply. See AS 38.09.010.

10. Jourdan claims the place of publication was the Anchorage Daily News, but the record shows the actual place of publication to be the Anchorage Times.

11. AS 09.35.140(2)(B).

12. The Alaska Journal of Commerce has previously been determined by the court system to be an acceptable alternate location of publication to the Anchorage Daily News. Moreover, the Anchorage Times had ceased publication by the time of the second notice, so re-publication in the same newspaper would have been impossible.

13. See AS 09.35.140:

(1) notice of the sale of personal property is given by posting a written or printed notice of the time and place of sale in three public places within five miles of the place where the sale is to be held, not less than 10 days before the day of sale; one of the notices shall be posted at the post office nearest to the place where the sale is to take place; (2) notice of the sale of real property is given by posting a similar notice particularly describing the property, including the property's street address if there is a street address for the property, not less than 30 days before the day of sale in three public places, as provided in (1) of this section, and publishing a copy of the notice four times, once a week for four successive weeks in a newspaper of general circulation published nearest to the place of sale.

14. Freddie Mac claims a stated date of December 7, 1993, but there is nothing in the record to confirm this.

to the actual February 10, 1994 sale date was not only minimal, but also due to Jourdan's own legal actions.

### C. Jordan's Other Eviction Claims Are Without Merit.

Jourdan raises a variety of other eviction-related claims, such as unlawful forcible entry, defective foreclosure, constructive eviction, invasion of privacy, intentional infliction of emotional distress, and punitive damages. All of these claims are based either on rightful possession of property or on inappropriate government action. In both instances they must be dismissed.

■ Jourdan did not have rightful possession of her property and thus cannot claim harms based on the mere fact of her eviction. For example, Jourdan claims that the procedure used to evict her was illegal because she did not have a landlord-tenant relationship with her creditor. However, a forcible entry and detainer action is not limited to landlord-tenant relationships but rather is meant to cover all possession of real property. Jourdan cites *Modrok v. Marshall*[15] and AS 09.45.060 [16] to support her argument. These authorities, though, specifically grant entry where appropriate legal procedures have been followed. Indeed, *Modrok* addressed a situation other than a landlord-tenant relationship—an attempt to evict a husband from a marital home following a divorce settlement—and held that forcible detainer actions applied.[17]

■ As to the manner of her eviction, Jourdan cannot in the present suit sue government officials for their official conduct. Jourdan claims in several places that in executing the writ of assistance to evict her, the Anchorage Police Department used excessive force when they entered her house on November 5, 1999. The individual police officers are not parties to the present suit, nor is the Anchorage Police Department. Consequently, this case cannot address claims in which government officials are being sued for their official conduct. Jourdan further alleges that the police officers were acting "via instructions" from Ullstrom and Crabtree. Though the police officers were executing a court order for a motion brought by Freddie Mac's attorneys, they were not operating as agents of Ullstrom and Crabtree but rather were carrying out standard police functions.

### D. Jourdan's Status as a Pro Se Litigant Was Given Adequate Accommodation.

Jourdan suggests that the superior court should have given her special consideration because she is a pro se litigant. She cites several cases to support her claim.[18] However, Jourdan does not make clear what accommodations she feels she deserved but was denied. Jourdan was allowed to present evidence and affidavits in her defense. Jourdan seems to claim primarily that Judge Joannides erred by not ruling on her second motion to amend her complaint. Jourdan presents no argument explaining why the failure to rule was due to Jourdan's status as a pro se litigant.

■ The record does not support Jourdan's claim that her status as a pro se liti-

---

**15.** 523 P.2d 172, 174 (Alaska 1974) ("It is well-settled that where title to the property is in dispute, dispossession by this summary procedure may not be ordered. Instead, the plaintiff must establish his paramount title in an action for ejectment.").

**16.** The statute provides: "A person may not enter upon any land, tenement, or other real property except in cases where entry is given by law. In those cases the entry may not be made with force but only in a peaceable manner."

**17.** 523 P.2d at 175.

**18.** *See Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987) (holding that "the trial judge should inform a pro se litigant of the proper procedure for the action he or she is obviously attempting to accomplish"); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding that allegations in a pro se complaint are held "to less stringent standards than formal pleadings drafted by lawyers"); *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir.1975) (holding that entry of summary judgment against a pro se state prisoner was inappropriate where the litigant had not been informed of his right to file counter-affidavits); *Hudson v. Hardy*, 412 F.2d 1091, 1094–95 (D.C.Cir.1968) (holding that a pro se prisoner was due special consideration in light of his condition, including explaining the summary judgment rule to him).

gant was not given adequate accommodation. Jourdan was allowed to file an amended complaint on January 10, 1995. Her second attempt to amend her complaint came three years later on January 21, 1998. The court, after several delays, scheduled oral argument for March 26, 1998. The trial court did not address the request to amend the complaint a second time, but it did address Jourdan's late-filed response to Freddie Mac's request for admissions filed in 1995, and Jourdan's late-filed request for admission of new evidence. In the interests of "resolving disputes on the merits" and making sure that Jourdan had a fair hearing, the court accepted both of these motions. Thus, it does appear that the court was willing to show some leniency to Jourdan, perhaps because of her pro se status.

■■ *Brown v. Ely* gives the trial court broad discretion in deciding whether or not to allow a party to amend a complaint.[19] The fact that amended complaints are potentially allowed, though, does not mean that the court is required to allow them. The allegations contained in the second amended complaint that were not contained in earlier complaints were charges of violating her right to enjoy her home, misuse of process, disparagement of character, deprivation of civil rights, malicious prosecution, and disparagement of title. Like those above, these claims are all predicated on rightful possession of the property in question. Because Jourdan's house was properly foreclosed, it would have been futile to allow the claims listed in Jourdan's attempted second amendment to proceed. Judge Joannides was therefore not obligated to accept Jourdan's requested amendment.[20]

### E. Charles R. Elder Was Not an Indispensable Party.

■■ Jourdan argues that Charles R. Elder, Jr., or by extension his estate, should be included in the suit as both an indispensable party and a real party in interest.[21] Jourdan filed a motion to join Elder as an indispensable party in March 1999. Judge Joannides rejected this motion on the grounds that Elder "had no significant involvement with the issues now being litigated between Jourdan and Nationsbanc."

Freddie Mac contends that Elder could not have been an indispensable party because he deeded any interest he had in the property to Jourdan many years prior. Elder, by Jourdan's own admission, had signed a quitclaim deed transferring the property to Jourdan's company, Royalty Company, in December 1985.

■■ Alaska Rule of Civil Procedure 19(a) states that parties can be joined where adequate relief cannot be granted in the absence of that party or where the joinder of the indispensable party is necessary for an existing party to protect their interests. Under these criteria, Elder is not an indispensable party.[22] Jourdan is challenging a foreclosure action; whether or not Elder is joined will have no effect on the remedy that Jourdan is seeking. Consequently, ₅the decision of Judge Joannides not to join Elder as a party is affirmed.[23]

### F. There Was No Error Regarding the Appointment of a Conservator for Jourdan.

■■ Jourdan raises an issue concerning whether or not a conservator should have

---

**19.** 14 P.3d 257, 259 (Alaska 2000) ("A decision to grant or deny a motion to amend after the initial limitations period has passed under Alaska Civil Rule 15(a) is a matter within the broad discretion of the trial court and is reviewed for abuse of discretion.").

**20.** *See Alderman v. Iditarod Properties, Inc.*, 32 P.3d 373, 395 (Alaska 2001) (holding that a trial court may deny amendment of a complaint when the amendment offered is "unduly delayed, offered in bad faith, or futile").

**21.** Jourdan also makes this claim about Stewart Title Company, who was the trustee for the dis-

puted property, and Pacific Northwest Title Company, whose role in the disposition of Jourdan's house is never clarified. Her entire discussion, however, focuses on Elder.

**22.** Who may be joined as an indispensable party is a question of law to which we apply our independent judgment. *Silvers v. Silvers*, 999 P.2d 786, 792 (Alaska 2000).

**23.** By extension, Judge Souter's order dismissing Stewart Title Company, to the extent that it is challenged at all, is affirmed. Pacific Northwest Title Company is also not to be considered an indispensable party.

been appointed for her after Freddie Mac's September 1996 motion to require Jourdan to show cause why oral arguments should not proceed, but it is not clear what she is arguing. Jourdan first claims that the evidence did not rise to a level that would justify Freddie Mac filing for a conservator.[24] Jourdan then claims that Judge Hunt erred in not recognizing Jourdan's incompetence and appointing a conservator for her.[25] It appears Jourdan is arguing that Freddie Mac should not have been allowed to petition for a conservator before the judge herself decided if a conservator was necessary.[26] However, Freddie Mac did not do anything illegal in filing a motion requesting a conservatorship for Jourdan. The court eventually ruled Jourdan competent to conduct her own legal affairs. She does not appeal this decision. Consequently, there are no reasonable grounds on which to address the conservatorship issue on appeal.

### G. The Superior Court Was Correct To Deny a Waiver of Jourdan's Supersedeas Bond.

 Jourdan contends that the supersedeas bond she was required to post as a condition of staying the judgment of the superior court should have been waived "in order to prevent erosion of public confidence in the judicial system until the Supreme Court made its ruling on this appeal." Jourdan wanted to assign her future Permanent Fund Dividend checks as security for the supersedeas bond, but Judge Joannides would not allow this. Jourdan further asserts that because she was not in a landlord-tenant relationship the superior court committed reversible error by basing the supersedeas bond on rent.

 An order requiring a supersedeas bond is reviewed for abuse of discretion.[27] Under Alaska Appellate Rule 204(d),[28] a supersedeas bond can be required when the appellant seeks to stay an action pending appeal.[29] Jourdan sought such a stay, therefore the requirement of a supersedeas bond was reasonable. Freddie Mac argues that because the action in question was a foreclosure on a house, it was reasonable to base the supersedeas bond on the amount of rent that would have been obtainable were Freddie Mac allowed to rent out the house. It was not an abuse of discretion for Judge Joannides to have so decided.

 Jourdan also claims that she should not be required to post a supersedeas bond because she is litigating in the public interest. Determination of whether a litigant is litigating in the public interest is made on

---

24. Jourdan claims that she was being treated at the time for "biological diagnosed depression," along with severe back pain and complications from surgery. She does not cite to anything in the record suggesting that this necessitated the appointment of a conservator. Jourdan's motion from November 21, 1996 to stay all matters until after she had the opportunity to undergo surgery in Seattle was denied because she failed to show that additional time for recovery was necessary other than the two months that the court had already granted.

25. Jourdan's brief asserts:

The Superior Court committed plain error, prejudice and abuse of discretion by allowing appellant to represent herself in propria persona "immediately" prior to appellees' filing the petition to proceed in Probate Court, because the judge's silence, conduct and negligence are evidence she erred by failing to recognize Jourdan's alleged incompetence. Such incompetence made it incumbent on Judge Hunt, [on her own motion], to Petition Probate Court for a Special Conservator for Ava Jourdan, as to Case No. 94–1356–CI. Therefore, appellant

moves the Supreme Court to reverse Judge Hunt due to her prejudice, abuse of discretion and *plain error.*

26. Jourdan's brief states: "Judge Hunt committed clear reversible err[or] when she condoned Appellee's petitioning Probate Court for a Special Conservator of Appellant Jourdan without first compelling Appellees to file a motion for her to rule on as to whether or not a Petition to Appoint a Special Conservator for Appellant Jourdan was necessary."

27. *See Breck v. Moore,* 910 P.2d 599, 609 (Alaska 1996).

28. The rule states in part: "Whenever in a civil case an appellant entitled thereto desires a stay on appeal, the appellant may present to the superior court for its approval a supersedeas bond which shall have such surety or sureties as the court requires."

29. *Cameron v. Hughes,* 825 P.2d 882, 885 (Alaska 1992).

a case-by-case basis.[30] This determination is based on whether the case will "effectuate strong public policies"; whether a large number of people will benefit from the litigation; whether only a private party could have brought the litigation; and whether the litigant would have brought the suit for personal benefit.[31] Jourdan satisfies only the third of these criteria: Her case is very limited in scope; it concerns only herself; only a private party could have brought this case, though this is true of a majority of civil cases; and the case was entirely for her personal benefit. Jourdan claims that she is a public interest litigant because the decision in this case will have precedential value. However, this does nothing to distinguish Jourdan from any other litigant. She is clearly not a public interest litigant.

### H. Jourdan Was Not Adversely Affected by Alleged Discovery Abuse and Other Evidentiary Issues.

Jourdan alleges discovery abuse occurred because Judge Milton Souter denied on June 21, 1995 her motion to compel discovery. The order was denied without comment, so it is difficult to tell on what grounds Judge Souter relied. Jourdan does not clarify the nature of the documents she believes were withheld. Freddie Mac responds both that they *did* comply with applicable automatic discovery requirements under then-Civil Rule 16.1[32] and that Jourdan never made any specific discovery requests in the four years that the case was pending. The party claiming a discovery error or abuse has the burden of showing the existence of that error or abuse, though after this demonstration the burden does shift to the party that allegedly concealed discover-

able documents.[33] Absent clearer allegations by Jourdan, it is impossible to engage in meaningful legal analysis on this issue.[34]

Jourdan further argues that an evidentiary hearing, including the presentation and cross-examination of witnesses, should have taken place at the March 26, 1998 summary judgment hearing before Judge Hunt. However, Alaska Civil Rule 56, which lays out the procedures for summary judgment hearings, allows for affidavits, depositions, interrogatories, pleadings, and admissions, but does not allow for live witnesses.[35]

Finally, Jourdan asserts that Judge Hunt committed "reversible error" by "giving *great evidentiary weight*" to an affidavit notarized by Crabtree, one of the parties to this case. The affidavit in dispute attested to the fact that Jourdan would not be able to raise the money necessary to cover her debt prior to foreclosure. But because Jourdan failed to perform on the "workout" agreement despite being given the opportunity by the superior court to do so, the disputed affidavit was not necessary to Judge Hunt's decision.

### I. Judge Hunt Correctly Declined To Recuse Herself.

Jourdan filed a motion on October 14, 1998, about six weeks after Judge Hunt had issued her opinion, asserting that Judge Hunt should have recused herself from the summary judgment hearing. This motion was denied without comment. Jourdan asserts three reasons why Judge Hunt should have been disqualified from her case: (1) Judge Hunt issued contradictory evidentiary rulings; (2) Judge Hunt treated Jourdan

---

**30.** *Anchorage Daily News v. Anchorage Sch. Dist.,* 803 P.2d 402, 404 (Alaska 1990).

**31.** *Id.*

**32.** Civil Rule 16.1 was repealed by statute effective July 15, 1997. Alaska Supreme Court Order No. 1266 (July 15, 1997).

**33.** *See Alaska Trams Corp. v. Alaska Elec. Light & Power,* 743 P.2d 350, 354 (Alaska 1987) ("Once noncompliance is shown, the burden is upon the noncomplying party to prove that its failure to provide discovery was not willful.").

**34.** Jourdan also seems to allege discovery abuse by Judge Herbert A. Ross in United States Bankruptcy Court, but that issue is beyond our jurisdiction.

**35.** Jourdan also claims that Judge Hunt improperly denied Jourdan the admission of *"newly discovered evidence."* However, Judge Hunt's decision makes it clear that this evidence *was* admitted.

with disdain; and (3) Judge Hunt was appointed by Governor Sheffield, who was a personal friend of Charles Elder, allegedly a party to the case.

 The justifiable reasons for recusal of a judge are laid out in AS 22.20.020(a).[36] None of the three reasons for recusal offered by Jourdan falls within the reasons for recusal listed in the statute. Judges are required to recuse themselves not only if there is actual bias but also if there is the appearance of bias.[37] However, the mere appearance of bias requires a "greater showing" by the petitioner for recusal.[38] The refusal by a judge to be recused from a case is reviewed for an abuse of discretion.[39] Issuing an evidentiary ruling against Jourdan does not constitute bias.[40] The evidentiary ruling is appealable and has in fact been appealed. Even if Judge Hunt's ruling on this evidentiary issue were found to be improper, this does not rise to the level of bias.

 Reviewing Jourdan's motion for recusal reveals that most of her claims of bias are based on Judge Hunt's application of the law. By themselves, interpretations of the law are not sufficient to demonstrate the existence of bias.[41] Jourdan claims that Judge Hunt "smirk[ed]" and "laugh[ed]" at her during the March 26, 1998 hearing. However, the statements that Jourdan alleges show Judge Hunt's disdain are more appropriately interpreted as an explanation of proper court procedure.[42] While it is difficult to tell from the transcript the demeanor of Judge Hunt, absent further evidence by Jourdan it is impossible to conclude that Judge Hunt acted inappropriately. Finally, being appointed by a governor who allegedly was a friend of one of the parties[43] does not in itself constitute a close enough connection to merit recusal of the judge.[44]

 Jourdan further alleges that she should have been given the opportunity to preempt Judge Hunt under Alaska Civil Rule

---

36. The statute provides:
 (a) A judicial officer may not act in a matter in which
 (1) the judicial officer is a party;
 (2) the judicial officer is related to a party or a party's attorney by consanguinity or affinity within the third degree;
 (3) the judicial officer is a material witness;
 (4) the judicial officer or the spouse of the judicial officer, individually or as a fiduciary, or a child of the judicial officer has a direct financial interest in the matter;
 (5) a party, except the state or a municipality of the state, has retained or been professionally counseled by the judicial officer as its attorney within two years preceding the assignment of the judicial officer to the matter;
 (6) the judicial officer has represented a person as attorney for the person against a party, except the state or a municipality of the state, in a matter within two years preceding the assignment of the judicial officer to the matter;
 (7) an attorney for a party has represented the judicial officer or a person against the judicial officer, either in the judicial officer's public or private capacity, in a matter within two years preceding the filing of the action;
 (8) the law firm with which the judicial officer was associated in the practice of law within the two years preceding the filing of the action has been retained or has professionally counseled either party with respect to the matter;
 (9) the judicial officer feels that, for any reason, a fair and impartial decision cannot be given.

37. *Perotti v. State,* 806 P.2d 325, 327 (Alaska App.1991).

38. *Lacher v. Lacher,* 993 P.2d 413, 421 n. 21 (Alaska 1999); *Blake v. Gilbert,* 702 P.2d 631, 642 (Alaska 1985).

39. *Id.*

40. *Cf. R.J.M. v. State,* 946 P.2d 855, 869–70 (Alaska 1997) ("This court will not overturn a trial judge's recusal decision 'unless it is plain that a fair-minded person could not rationally come to that conclusion on the basis of the known facts.' " (quoting *Amidon v. State,* 604 P.2d 575, 577 (Alaska 1979))).

41. *Cf. Lacher,* 993 P.2d at 420–21 (dismissing an argument for recusal as "little more than an expression of [appellant's] dissatisfaction with the superior court's ruling").

42. It should be noted that the exact quotations alleged in Jourdan's brief do not appear in the transcript from that day, though similar topics are addressed.

43. Jourdan does not present any evidence to back this assertion. Furthermore, Charles Elder has been deemed not to be an indispensable party to this case, rendering this aspect of Jourdan's argument moot.

44. *See* AS 22.20.020(a).

42(c).[45] It is unclear from Jourdan's limited presentation of facts whether or not she had an opportunity to preempt Judge Hunt. Regardless, her argument loses any effect it may have had due to the fact that Jourdan waited until after Judge Hunt issued her ruling to assert that Judge Hunt should have recused herself.[46]

Jourdan further asserts that Superior Court Judge Sen K. Tan should have recused himself from hearing one of Jourdan's motions in the case because he was not assigned to the case and because he had been assigned to another case in which she was a party concerning the removal of Jourdan's personal property and household goods. Jourdan does not specify which motion this is, but it appears she is referring to Judge Tan's order affirming Judge Hunt's refusal to recuse herself. If so, review of a judicial officer's disqualification is required as a matter of law.[47] Furthermore, a judge who has previously presided in a trial involving the plaintiff, and held against the plaintiff, is not automatically required to be recused from any future cases involving the plaintiff.[48]

## V. CONCLUSION

Ava Jourdan raises a variety of claims surrounding the 1994 foreclosure on her home. The dispute before the court arises from the summary judgment order entered by Judge Hunt on August 27, 1998 and related subsequent matters. Because all of Jourdan's claims are without merit, the orders of the superior court are AFFIRMED in all respects.

EASTAUGH, Justice, not participating.

---

**45.** The rule states in pertinent part: "In an action pending in the Superior or District Courts, each side is entitled as a matter of right to a change of judge and of one master."

**46.** *See Lacher,* 993 P.2d at 421 (holding that the "trial court's decision did not 'demonstrate any specific bias or generalized pattern of bias' " where the party did not complain of bias until after the adverse ruling against her (quoting *Alaska Trams Corp. v. Alaska Elec. Light & Power,* 743 P.2d 350, 353 n. 7 (Alaska 1987))).

**47.** *See* AS 22.20.020(c).

**48.** *Pride v. Harris,* 882 P.2d 381, 385 (Alaska 1994).