*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MICHELE LYN BEACH, | ) | |
| | ) | Supreme Court No. S-14811 |
| Appellant, | ) | |
| | ) | Superior Court No. 3UN-10-00054 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SONIA HANDFORTH-KOME, | ) | |
| Individually, and ILIULIUK FAMILY | ) | No. 6845 - November 29, 2013 |
| HEALTH SERVICES, INC., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Unalaska, Pat L. Douglass, Judge.

Appearances: Joe P. Josephson, Josephson Law Offices, LLC, Anchorage, for Appellant. Elizabeth P. Hodes, Davis Wright Tremaine LLP, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

Michele Beach was fired from her job at Iliuliuk Family and Health Services, a health clinic, when the clinic's executive director concluded that prescription drug records had been systematically falsified and that Beach was responsible. Beach sued the clinic and its executive director, alleging that they had breached the implied

covenant of good faith and fair dealing by conducting an unfair investigation and unlawfully retaliating against Beach for her suggestions about improvements in the clinic's security systems. The superior court granted summary judgment to the defendants, and Beach appeals. We affirm.

## II. FACTS AND PROCEEDINGS

In July 2008, Michele Beach was hired as a medical assistant at Iliuliuk Family and Health Services, a family health clinic. In the months following her arrival, Beach identified what she considered to be serious issues with the clinic's handling of prescription drugs, staffing, and necessary medical equipment, and she suggested improvements in some of these areas to her supervisors.

On December 18, 2008, a patient told the clinic's Medical Director, Dr. Heidi Baines, that she had bought Vicodin, a prescription narcotic drug, from a woman who claimed to have obtained the pills from a clinic employee. Dr. Baines passed this information on to the clinic's Executive Director, Sonia Handforth-Kome. Handforth-Kome left a message for the police "that we [probably have a] drug issue that we need[] the police to investigate," then met Dr. Baines at the clinic that evening after closing time. The two of them began reviewing the records for July through October 2008, the period that seemed relevant based on the patient's report.

The clinic's dispensary records included "drug logs" maintained separately for each narcotic drug, which identified among other things the patient, the date the drug was dispensed, the dispensing health-care provider, the number of pills dispensed, and the clinic employee who dispensed them. Clinic practice required that these logs be cross-checked daily or almost daily by a tally of the pills still remaining in the clinic's inventory. Also relevant to the review were patients' medical charts, which usually

included the provider's notes about the number of pills that had been prescribed along with a sticker signed by the employee who dispensed them, verifying the number; and documents called "superbills," which were detailed lists for each patient of all the charges made to the patient and the patient's insurer.

In their review of these records for the drug Vicodin, Handforth-Kome and Dr. Baines found a pattern of discrepancies, beginning in September 2008 and increasing in frequency into December. They found that although the daily pill counts matched the logs, the number of pills being dispensed for some patients was far in excess of those being prescribed for and billed to those patients; in other cases there were records of pills being dispensed to patients who had not been seen on the date of the entry or patients who did not even exist. In many instances the log showed that 40 pills had been dispensed while comparison with the other records showed that the patient had been prescribed and billed for only 20, leaving the other 20 pills unaccounted for. On every entry for which the discrepancy could not be explained by a cross-check of the medical charts or superbills, the person who had initialed it was Beach. Handforth-Kome could think of no valid explanation for the many discrepancies and concluded that what they had uncovered was a "flagrant, systematic and extensive falsification of the dispensary log" and "a serious and significant policy violation" by Beach. Handforth-Kome testified by affidavit that she was surprised to reach this conclusion, as she had "previously considered [Beach] an asset to [the clinic]."

Having confirmed through this review that none of the suspect entries could be attributed to the clinic's Director of Clinical Services, Ramona Thompson, Handforth-Kome called Thompson and asked her to come to the clinic and help with the ongoing audit. Handforth-Kome also informed Thompson that as Beach's direct supervisor she

would have to terminate Beach immediately, and that Beach could not be allowed any more access to the clinic. Thompson accordingly fired Beach when she arrived for work the next morning, informing her that the reason was her falsification of records. There is no evidence that Thompson, Handforth-Kome, or any other supervisory employee of the clinic attempted to elicit Beach's side of the story before the decision to discharge her was made and carried out.

The police conducted their own investigation of the loss of Vicodin and other drugs from the clinic, and in March 2009 Beach and another former employee of the clinic were indicted on various counts of misconduct involving controlled substances. The criminal charges against Beach were dismissed in July 2010. In December 2010 she brought this suit against Handforth-Kome and the clinic. She admitted in her complaint that she was an at-will employee but alleged that her discharge had breached the implied covenant of good faith and fair dealing in two ways: first, because the clinic had failed to conduct a fair investigation, and second, because it had terminated her in retaliation for her attempts to improve the clinic's security procedures.

The defendants moved for summary judgment on both theories, and the superior court granted their motion. The court rejected the unfair-investigation theory on grounds that Beach was an at-will employee who was subject to immediate dismissal for falsifying records, with no contractual right to an investigation before termination. It rejected her retaliatory-discharge theory on three independently sufficient grounds: that her complaints about clinic security were not protected activity, that there was no evidence her discharge was related to her complaints, and that she could not disprove the legitimacy of the defendants' justification for her discharge.

Beach appeals. She argues that there is a genuine issue of material fact as to whether her termination was objectively fair, given that the clinic failed to interview her or relevant doctors and patients or to consider progressive discipline. She also argues that her complaints about clinic security were protected activity and the superior court therefore erred in rejecting her retaliatory-discharge claim.

## III. STANDARD OF REVIEW

We review a superior court's grant of summary judgment de novo.[1] We determine whether any genuine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law.[2] "We draw all factual inferences in favor of, and view the facts in the light most favorable to, the party against whom summary judgment was granted."[3] Contract interpretation is a question of law reviewed de novo.[4]

## IV. DISCUSSION

### A. There Was No Genuine Issue Of Material Fact As To Whether The Clinic's Investigation Was Objectively Fair.

The parties agree that Beach was an at-will employee. Even an at-will employment contract contains an implied covenant of good faith and fair dealing.[5] The implied covenant has an objective component requiring that the employer act in a manner

---

[1]    *Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 351 (Alaska 2011) (citing *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995)).

[2]    *Id.* (quoting *Nielson*, 903 P.2d at 1052).

[3]    *Id.* (citing *Rockstad v. Erikson*, 113 P.3d 1215, 1219 (Alaska 2005)).

[4]    *Rathke v. Corr. Corp. of Am., Inc.*, 153 P.3d 303, 308 (Alaska 2007) (citing *Smith v. Cleary*, 24 P.3d 1245, 1247 (Alaska 2001)).

[5]    *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983).

that a reasonable person would regard as fair.[6]  Beach alleges that the clinic acted unfairly when it failed to question her or other potential witnesses about the allegations against her before deciding to terminate her employment.

The investigation in this case was prompted not because the clinic suspected wrongdoing on Beach's part, but because the clinic's medical director had received what she considered to be a credible report from a patient that an unnamed clinic employee was distributing Vicodin illegally.  Handforth-Kome repeated the details of the investigation in both an affidavit and deposition testimony, and her description of it — summarized above — was not disputed.  In short, Handforth-Kome and Dr. Baines conducted a thorough review of the records relevant to the clinic's dispensing of Vicodin, and the review led them to believe that (1) the drug logs had been systematically falsified, and (2) Beach was responsible for the falsification.  When asked at her deposition, Beach could not think of any evidence she could have given Handforth-Kome to change her conclusion that the log entries had been falsified; further, she agreed that the records review was "extremely . . . pointing in [her] direction," that it was reasonable for the clinic to conclude that Beach was the one responsible for the logs' falsification, and that there was no evidence that, "at that time," would have pointed to somebody else as the culprit.

Beach nonetheless argues that the clinic's procedure falls short of objective fairness, pointing to the clinic's failure "to consult [Beach], to talk to doctors, to speak with patients, or to put [Beach] on administrative leave or suspension," particularly "when coupled with [Beach's] good record as an employee."  She does not identify any information that could have been gleaned from interviews and could have changed the

---

    **6**    *Smith v. Anchorage Sch. Dist.*, 240 P.3d 834, 844 (Alaska 2010) (quoting *Mitchell v. Teck Cominco Alaska Inc.*, 193 P.3d 751, 761 (Alaska 2008)).

clinic's conclusion. In her deposition she pointed to details in a few entries that she believes could have directed suspicion away from herself, but she does not appear to argue that these were sufficient to make the clinic's original conclusion unreasonable.[7]

Beach argues that our case law required at least that she be interviewed about the alleged wrongdoing before being terminated. In *Mitchell v. Teck Cominco Alaska Inc.*, on which Beach relies, we held there was a triable issue of fact as to the fairness of the process when an employer terminated an employee without informing him of the sexual-harassment charges against him and giving him the opportunity to respond.[8] But important to this holding was Teck Cominco's agreement "that under its policies and procedures, it was required to investigate the sexual harassment allegations against [the employee] before firing him" and its further concession at oral argument "that the implied covenant requires some minimal level of fairness to the employee during an employer's investigation."[9] *Mitchell* holds that if there is a duty to investigate, the investigation must be fairly carried out.

In this case, the employee handbook identifies certain types of misconduct for which the clinic may impose discipline, up to and including "immediate dismissal," "without prior warning based on the seriousness of misconduct."[10] In a non-exhaustive

---

[7]    Beach testified that as a newcomer to the community, she would not have known some of the names to which prescriptions were falsely attributed. She also testified that a "scribble through [a] name" on one suspect entry was unlike any correction she would have made: "If there was a mistake . . ., a line went through it, not a scribble like that."

[8]    193 P.3d at 761.

[9]    *Id.*

[10]    We note Beach's assertion in her reply brief that she was not familiar with
(continued...)

list of misconduct warranting immediate dismissal, the employee handbook includes "willful falsification or misrepresentation on . . . work records" and "unauthorized alteration of clinic records or other clinic documents." Beach conceded the reasonableness of the clinic's conclusion that its records had been falsified and that she was responsible.

Given the clinic's reasonable conclusion about what had occurred and who was responsible, the "immediate dismissal" of Beach "without prior warning" was, according to the handbook, among its options for disciplining her. Our decision is therefore controlled not by *Mitchell* but by *Ramsey v. City of Sand Point*, in which, as here, there was no promise of a pre-termination investigation.[11] We held in *Ramsey* that "[a]s a matter of law, a jury could not find [the employer's] termination without an investigation violated [the objective prong of] the implied covenant" where the employment contract at issue "authorized [the employer] to terminate [the employee] for any reason whatsoever, so long as it paid him an additional six months' salary as

_____

**10**    (...continued)
the clinic's discipline policies. At her deposition, however, she admitted signing an acknowledgment that stated she had received a copy of the handbook, "read and understood" it, "agree[d] to comply with all policies[,] and underst[ood] that a breach of these policies may result in disciplinary action up to and including termination." The clinic relied on the handbook and Beach's written acknowledgment of it in its motion for summary judgment. In her opposition to the summary judgment motion, Beach made only a single oblique reference to clinic discipline policies but did not dispute their existence, claim ignorance of them, or otherwise identify any genuine issues of material fact that might suggest that the clinic's reliance on those policies was reasonably disputed. By raising this argument for the first time on appeal, Beach has waived it. *In re Estate of Blodgett*, 147 P.3d 702, 709 n.47 (Alaska 2006) (citing *Willoya v. State, Dep't of Corr.*, 53 P.3d 1115, 1120 (Alaska 2002); *Brandon v. Corr. Corp. of Am.*, 28 P.3d 269, 280 (Alaska 2001)).

**11**    936 P.2d 126, 128, 133 (Alaska 1997).

severance pay."[12] We held in *Ramsey*, as we have held in other cases, that an employer is not required to provide an employee with procedural protections that conflict with those to which they have agreed; "[t]he covenant of good faith cannot be interpreted to prohibit what is expressly permitted by [the parties'] contract."[13] In this case, it is undisputed that Handforth-Kome and Dr. Baines conducted a methodical review of the records necessary to allow them to reach a reasonable conclusion about what had happened and who was responsible for it. Once they had discovered grounds for Beach's immediate dismissal as described in the handbook, the implied covenant of good faith and fair dealing did not require them to give her additional procedural protections.[14]

B.  **There Are Sufficient Alternative Bases For Affirming Summary Judgment On Beach's Retaliation Claim.**

A discharge in retaliation for the employee's legitimate complaints about job safety and health may give rise to a claim for breach of the implied covenant of good faith and fair dealing.[15] To make out a prima facie case, an employee must show that she engaged in protected activity, her employer subjected her to an adverse employment

---

[12]    *Id.* at 133.

[13]    *Id.*; *see also Era Aviation, Inc. v. Seekins*, 973 P.2d 1137, 1141 (Alaska 1999).

[14]    Beach alludes to progressive discipline as an alternative to immediate discharge but makes no focused argument about it in her opening brief. Any right she had to progressive discipline is subject to the same analysis as her right to a pre-termination investigation; that is, the covenant of good faith and fair dealing will not impose procedural requirements that conflict with what is required by the parties' agreement. *See Hoendermis v. Advanced Physical Therapy, Inc.*, 251 P.3d 346, 355-56 (Alaska 2011).

[15]    *Willard v. Khotol Servs. Corp.*, 171 P.3d 108, 115 (Alaska 2007) (citing *Reed v. Municipality of Anchorage*, 782 P.2d 1155, 1158-59 (Alaska 1989)).

action, and there was a causal link between the protected activity and the adverse action.[16] The burden then shifts to the employer to offer evidence of a legitimate reason for the adverse action.[17] Upon such a showing, the burden shifts back to the employee to offer evidence that the employer's explanation is merely a pretext.[18]

The superior court rejected Beach's retaliation theory on three alternative grounds. It held first that her complaints about security procedures were not protected activity, and second, even if the complaints were protected, that the evidence showed they were well received by her employer, "strongly refuting any causal connection between her proffered protected activity and her termination."[19] The court further held that even if there were evidence supporting these elements of a prima facie case, the clinic had proffered a legitimate, non-retaliatory explanation for her discharge — the falsification of drug records — and, with the burden shifting back to her, Beach had failed to offer evidence that this explanation was pretextual.

The only argument Beach makes on appeal regarding her retaliatory discharge claim is that her complaints about security were protected activity. She does not address the alternative bases for the superior court's rejection of the claim. She does not point to any evidence indicating that her complaints, even if protected, caused her

---

[16] *See, e.g., Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 433 (Alaska 2004) (citing *Veco, Inc. v. Rosebrock*, 970 P.2d 906, 921 (Alaska 1999)).

[17] *Id*.

[18] *Id*.

[19] Indeed, Beach herself stated that her various suggestions for change in clinic procedures were well received by her supervisors. And when asked at her deposition whether she had any evidence to support her theory that Handforth-Kome "sought to scapegoat [Beach] because of [her] criticism of dispensary security," Beach conceded that she had none.

termination, nor does she point to evidence showing that the clinic's explanation was pretextual. As Beach has waived two independently sufficient bases for the superior court's resolution of her retaliatory discharge claim, we do not consider it any further.[20]

## V.   CONCLUSION

We AFFIRM the superior court's grant of summary judgment.

---

[20]   *Hitt v. J. B. Coghill, Inc.*, 641 P.2d 211, 213 n.4 (Alaska 1982) (holding that arguments not raised in the appellant's opening brief are waived).